**Barbara C. SMITH, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

No. 90–306.

United States Court of Veterans Appeals.

Argued March 21, 1991.

Decided May 24, 1991.

Ronald L. Smith, Washington, D.C., for appellant.

Angela Foehl, with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, were on the brief, Washington, D.C., for appellee.

Before NEBEKER, Chief Judge, and FARLEY and MANKIN, Associate Judges.

FARLEY, Associate Judge:

This appeal is from a decision of the Board of Veterans' Appeals (BVA or Board) regarding the collection of a deficiency resulting from a mortgage foreclosure and the payment of a guaranty under the Loan Guaranty Program, chapter 37 of title 38, United States Code. The Court concludes that it has jurisdiction under 38 U.S.C. § 4052(a) to review on appeal the Board's determination that a valid lawful debt exists and the Board's affirmance of the refusal to waive the entire debt. In the appeal now before this Court, we uphold the determination by the BVA that appellant is indebted to the United States. In addition, the Court holds that the decision to waive $5,000 of that debt, thereby rendering appellant liable for $1,916.88 plus interest, was neither arbitrary, capricious, nor an abuse of discretion. 38 U.S.C. § 4061(a)(3)(A).

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant, Barbara C. Smith, was married to David L. Nolton, a veteran. Mr. Nolton is not a party to this proceeding. During the course of their marriage, they purchased a home in the State of Indiana and were jointly and severally liable on a note held by Mercantile Mortgage Company (original mortgagee). The Veterans' Administration (now the Department of Veterans Affairs) (VA) guaranteed 60 percent of the total loan amount of $22,900 on the application of Mr. Nolton, who listed appellant as jointly liable on the loan; however, only Mr. Nolton signed the VA guaranty application.

The loan went into default as of March 1, 1981, after a check tendered as payment was returned for insufficient funds. Appellant and her husband were divorced on June 1, 1981. The divorce decree, R. at 104–06, reflects that appellant assigned all her rights in the property to the veteran and executed a quitclaim deed to that effect. In return for the award of the house subject to the underlying mortgage, the veteran promised to hold appellant "harmless" from the indebtedness. R. at 105. The decree does not indicate that appellant was released from liability on the note. Appellant relocated to Florida immediately after the divorce.

Since the loan was in default and the premises were vacant, the original mortgagee initiated foreclosure proceedings on August 21, 1981. R. at 33. The original mortgagee moved the Madison Superior Court, Division I, State of Indiana (hereafter the Indiana state court) to allow notice by publication. An attorney for the mortgagee stated in an affidavit that:

> Plaintiff does not know and with reasonable inquiry and diligence is unable to ascertain the present residence, mailing address or place of employment of said Defendants. Diligent search has been made for said Defendants, but said Defendants cannot be found and Plaintiff reasonably believes that the whereabouts of said Defendants cannot be discovered upon further reasonable inquiry.

R. at 41. The Indiana state court granted the motion and allowed service by publication. The record indicates that the notice was published three times during October, 1981. R. at 43–44. Appellant never responded to the notice of process and did not appear; however, her former husband did enter a personal appearance.

During the course of the foreclosure proceedings, appellant's former husband filed a petition in bankruptcy. He was granted a discharge by the bankruptcy court, the effect of which was to relieve him of personal liability. Mercantile Mortgage Company assigned its interest in the mortgage note and the property to Citicorp Homeowners, Inc. (Citicorp or successor mortgagee). The Indiana state court issued an

order substituting Citicorp for the original mortgagee. R. at 54.

A judgment and decree of foreclosure were issued by the Indiana state court on January 29, 1982. R. at 55–59. In the judgment, the Indiana court stated that it had subject matter jurisdiction, and that it was exercising its jurisdiction over the property and the persons of appellant and her former husband. The Indiana state court awarded the plaintiff an *in rem* judgment against the property and authorized its sale. The foreclosure proceedings resulted in a deficiency of $6,916.88 owing to the mortgagee. Citicorp moved the Indiana state court to enter a default judgment against appellant for the deficiency. R. at 64.

As guarantor, the VA paid the deficiency on April 13, 1982, R. at 78, and became subrogated to the rights of Citicorp pursuant to 38 U.S.C. § 1832(a)(1) (1988). The VA, as noted on a form entitled "Advice Regarding Indebtedness of Obligors on Guaranteed or Insured Loans," concluded that the veteran was released from any liability for the deficiency because of the discharge in bankruptcy and that the VA was therefore precluded from seeking indemnification of the $6,916.88 from the veteran. However, the VA also concluded that appellant was liable for the entire deficiency. R. at 87.

In 1988, six years after the VA's payment of the deficiency to Citicorp, the VA contacted appellant and requested repayment of the $6,916.88 plus interest. Appellant claimed to have no knowledge of the foreclosure, her former husband's bankruptcy, or any debt. She requested a hearing and specifically disputed that she was in debt to the United States; alternatively, she requested that the VA waive any indebtedness. R. at 89. Appellant wrote: "This waiver is requested on the grounds of inability to pay. But I also dispute the claim." R. at 89.

By regulation, requests for waivers are considered by a VA Regional Office Committee on Waivers and Compromises. 38 C.F.R. §§ 1.955–1.970 (1990). The Committee discussed whether appellant had received adequate notice of the foreclosure as well as the effect of the divorce decree on appellant's obligation to pay. It found that appellant was liable for the debt and able to pay the balance; however, the Committee did grant a partial waiver of $5,000 of the principal. R. at 109.

Appellant appealed to the Board. In her Notice of Disagreement (NOD), appellant stated: "I refute the statement that my divorce decree could not release me from liability. The judge gave me no right of redemption. I was not informed of the sale, nor was I made a party to the foreclosure." R. at 118. The BVA addressed appellant's concerns of inadequate notice and the effect of the divorce on her liability. In its February 13, 1990, decision, the BVA upheld the Committee's action, finding that appellant had received adequate notice and that her divorce had not relieved her of liability on the debt. A timely appeal to this Court followed.

Appellant's position has been consistent throughout. Before the Regional Office, the Board, and this Court, she has continued to challenge both the existence of any debt and, if such a debt does exist in fact and in law, the amount of that debt which should have been waived in equity and good conscience. There is no dispute that this Court has jurisdiction under 38 U.S.C. § 4052(a) (1988) to review the BVA's determination of the latter issue. There is a significant dispute as to jurisdiction regarding the former. Because they involve distinct considerations, we will discuss separately the Board's determinations upholding the existence of a debt and the waiver of only a portion of that debt.

## II.

### APPELLANT'S CHALLENGE TO THE EXISTENCE OF THE DEBT

■ The Secretary of Veterans Affairs (Secretary) contends that this Court lacks jurisdiction to review the threshold question of whether appellant owes a debt to the United States. We are told no less than three times, Br. at 3, 22, 24, that the BVA only had authority to review the waiv-

er decision and that this Court's jurisdiction is similarly circumscribed. Appellant disagrees, noting that the Secretary has not advanced a single case, statute, or regulation to support his position. From our review of the relevant authorities, we are compelled to agree with appellant: This Article I Court has the jurisdiction, and the responsibility, to review on appeal the determination made by the VA that appellant owes a debt to the United States.

## A. JURISDICTION

### 1.

Article I, Section 8, Clause 9, of the Constitution gives to Congress the power "To constitute Tribunals inferior to the supreme Court." The test used to determine whether this power has been unconstitutionally exercised is whether, in creating a non-Article III tribunal and defining its jurisdiction, Congress diminished or usurped judicial power reserved by Article III of the Constitution for courts with judges having lifetime tenure. Prior to *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the traditional distinction between an Article I (or legislative) court and an Article III court was whether the tribunal exercised jurisdiction over private rights or public rights. *See Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 15 L.Ed. 372 (1856); *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932). "[A] matter of public rights must at a minimum arise 'between the government and others.' In contrast, 'the liability of one individual to another under the law as defined,' is a matter of private rights." *Northern Pipeline*, 458 U.S. at 69–70, 102 S.Ct. at 2870–2871 (quoting *Ex parte Bakelite Corp.*, 279 U.S. 438, 458, 49 S.Ct. 411, 416, 73 L.Ed. 789 (1929). Private rights could only be determined in an Article III court but public rights could be adjudicated in a tribunal created by Congress under its Article I authority.

Veterans benefits are a classic example of public rights. Title 38 of the United States Code consists of a comprehensive benefits program for veterans and their dependents including, *inter alia,* compensation and pension, home loan guaranties, health care, insurance, and educational assistance. The Secretary is "responsible for the proper execution and administration of all laws administered by" the VA, 38 U.S.C. § 210(b)(1) (1988), and the Secretary is directed to "decide all questions of law and fact necessary to a decision by the [Secretary] under a law that affects the provision of benefits by the [Secretary] to veterans or the dependents or survivors of veterans." 38 U.S.C. § 211(a)(1) (1988).

It is beyond dispute that the Loan Guaranty Program for veterans, chapter 37 of title 38 of the United States Code, is "a federal regulatory program Congress has the power to enact." *Granfinanciera v. Nordberg*, 492 U.S. 33, 54, 109 S.Ct. 2782, 2797, 106 L.Ed.2d 26 (1989). In addition to defining the basic substantive entitlement of veterans to loan benefits, *see, e.g.,* 38 U.S.C. §§ 1802, 1803, 1810 (1988), chapter 37 defines the authority and responsibility of the Secretary and establishes procedural requirements. For example, the Secretary has been given the authority to "pay, compromise, waive or release any right, title, claim, lien or demand, however acquired, including any equity or any right of redemption." 38 U.S.C. § 1820(a)(4) (1988). The Secretary is specifically authorized to waive indebtedness or forego collection upon a determination that such collection would be "against equity and good conscience." 38 U.S.C. § 3102(a) (1988). However, the Secretary cannot waive indebtedness if there is any "indication of fraud, misrepresentation or bad faith on the part of the person or persons having an interest in obtaining a waiver." 38 U.S.C. § 3102(c).

There is also a procedural mechanism for the handling of defaults which vests a statutory right of subrogation in the Secretary:

In the event of a default in the payment of any loan guaranteed under this chapter, the holder of the obligation shall notify the Secretary of such default. Upon receipt of such notice, the Secretary may ... pay to such holder the guaranty not in excess of the pro rata

portion of the amount originally guaranteed. Except as provided in section 1803(e) of this title, if the Secretary makes such a payment, the Secretary shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guaranty.

38 U.S.C. § 1832(a)(1) (1988). To enforce and interpret section 1832, the Secretary promulgated regulations on subrogation and indemnity.

(a) The Secretary shall be subrogated to the contract and the lien or other rights of the holder to the extent of any sum paid on a guaranty....

(b) The holder, upon request, shall execute, acknowledge and deliver an appropriate instrument tendered for that purpose, evidencing any payment received from the Secretary and the Secretary's resulting right of subrogation.

(c) The Secretary shall cause the instrument ... to be filed for record ... in accordance with the applicable State law.

38 C.F.R. § 36.4323(a)–(c) (1990).

By regulation, the VA has established a mechanism which permits an alleged debtor to dispute the VA's conclusion that a debt actually exists. *See* 38 C.F.R. §§ 1.900–1.994 (1990); *Bahnmiller v. Derwinski*, 923 F.2d 1085, 1087 (4th Cir.1991). Once the VA has determined that there is a debt, the debtor must be advised of the fact of the debt *and* that he or she has the right to "informally dispute the existence or amount of the debt" as well as the right "to request waiver of the collection of the debt." 38 C.F.R. § 1.911(c). "These rights can be exercised separately or simultaneously." *Id.* If the alleged debtor elects to informally dispute the existence of the debt, he or she need only write to the VA, which will "as expeditiously as possible, review the accuracy of the debt determination." 38 C.F.R. § 1.911(c)(1). If the decision is adverse to the debtor, he or she "may appeal in accordance with Part 19 of [title 38 of the Code of Federal Regulations] the decision underlying the debt." 38 C.F.R. § 1.911(c)(3). Part 19 of title 38 of the Code of Federal Regulations, consists of the regulations dealing with appeals of decisions regarding veterans benefits to the Board.

Under 38 U.S.C. § 4004 (1988), the BVA has the jurisdiction, and the obligation, to review on appeal decisions made by the Secretary with respect to benefits. "All questions in a matter which under section 211(a) of this title is subject to decision by the [Secretary] shall be subject to one review on appeal to the [Secretary]. Final decisions on such appeals shall be made by the Board." 38 U.S.C. § 4004(a). In reviewing a benefits decision, the Board must consider the entire record, all of the evidence, and all of the applicable laws and regulations. *Id.*

The Veterans' Judicial Review Act, Pub.L. No. 100–687, Div. A, 102 Stat. 4105 (1988) (VJRA), created this Article I court and assigned it the responsibility for reviewing the decisions of the BVA. "The Court of Veterans Appeals shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." 38 U.S.C. § 4052(a). While this Court's review of factual determinations is not subject to further review, any party may appeal our decisions to the United States Court of Appeals for the Federal Circuit, an Article III court, "with respect to the validity of any statute or regulation ... or any interpretation thereof ... that was relied on by the Court in making the decision." 38 U.S.C. § 4092(a) (1988); *Prenzler v. Derwinski*, 928 F.2d 392 (Fed.Cir. 1991). The creation of this comprehensive mechanism for the judicial review of decisions affecting the public rights of veterans to benefits was well within the authority of Congress under Article I of the Constitution. It is now beyond question that Congress can create a structure for the adjudication of public rights outside of the Article III courts. *See Northern Pipeline*, 458 U.S. 50, 102 S.Ct. 2858 (bankruptcy courts); *Thomas v. Union Carbide Agricultural Prod. Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (arbitrators); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (agency determination of private counter-claim).

2.

This case presents a question of first impression for this Court since any right the Secretary has to collect from this appellant rests, in part, upon the Secretary's subrogation to the private rights of the mortgagee. Moreover, appellant's challenge to the existence of any debt essentially consists of a collateral attack upon the judgment of the Indiana state court. The threshold jurisdictional question, therefore, is whether this Article I Court has the authority under the Constitution to review decisions which in fact and in law determine private rights.

The distinction between public rights and private rights provided an easy rule of thumb for determining whether an adjudication by an administrative agency or non-Article III court intruded upon the judicial power of Article III courts. However, enthusiasm for this pristine distinction waned when it failed to gather a majority of the Court in *Northern Pipeline*. Shortly thereafter, in *Thomas*, the Court ruled that the constitutionality of Article I tribunals could not be determined by the simple application of a "bright line" rule. Instead, the Court "look[ed] beyond form to the substance of what" the quasi-judicial body accomplished. *Thomas*, 473 U.S. at 589, 105 S.Ct. at 3337.

In *Thomas*, the Court considered legislation which enabled the Environmental Protection Agency (EPA) to adjudicate a private contract action during the course of a binding arbitration. Limited Article III judicial scrutiny was provided, making the arbitrator's decision subject to judicial review only for " 'fraud, misrepresentation, or other misconduct.' " *Thomas*, 473 U.S. at 573–74, 105 S.Ct. at 3328–29 (citing Federal Pesticide Act of 1978, Pub.L. No. 95–396, § 3(c)(1)(D)(ii), 92 Stat. 819 (codified at 7 U.S.C. §§ 136–136y (1976 Supp. I))). The Court held that the award of such quasi-judicial authority to determine a private right to a non-Article III tribunal did not "contravene Article III."

Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, may create a seemingly "private" right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.

*Thomas*, 473 U.S. at 593–94, 105 S.Ct. at 3339–40.

After *Thomas*, it would not offend the Constitution if an Article I court determined private rights if such rights were "closely integrated into a public regulatory scheme" over which the Article I tribunal had been assigned jurisdiction by Congress. *See Thomas*, 473 U.S. at 586, 105 S.Ct. at 3335. However, where a private right "is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court." *Granfinanciera*, 492 U.S. at 54, 55, 109 S.Ct. at 2796, 2797 (footnote omitted).

■ Private rights to which the United States is subrogated and state court judgments which impact upon the administration of the federal Loan Guaranty Program are inextricably "intertwined" with the public rights resulting from the benefits conferred upon veterans by statute. Indeed, the federal Loan Guaranty Program displaces state law to the extent that federal law is inconsistent with state law. *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961); *see United States v. Whitney*, 602 F.Supp. 722 (W.D.N.Y.1985). "The Regulations promulgated by the Veterans' Administration make clear that they were intended to create a uniform system for determining the Administration's obligation as guarantor, which in its operation would displace state law." *Shimer*, 367 U.S. at 377, 81 S.Ct. at 1558. The determination of such private rights by the Board and this Article I court within the context of the judicial review of a BVA decision does not offend the principles of Article III of the Constitution. "[T]here is no reason inherent in separation of powers principles to accord the state law character of a claim talismanic power in

Article III inquiries." *Schor*, 478 U.S. at 853, 106 S.Ct. at 3258.

We therefore hold that we do not offend the Constitution in reviewing determinations of private rights, including those arising out of a state court judgment, when, as here, such rights are "closely integrated into a public regulatory scheme" over which this Article I court exercises judicial review pursuant to statute. *Thomas*, 473 U.S. at 594, 105 S.Ct. at 3339.

### 3.

Even if appellant was entitled to a ruling by an Article III court on her collateral attack upon the Indiana judgment, such an entitlement is subject to waiver. As Justice O'Connor has noted:

> Our precedents also demonstrate, however, that Article III does not confer on litigants an absolute right to the plenary consideration of every nature of claim by an Article III court. *See, e.g., Thomas*, [473 U.S.] at 583, 105 S.Ct., at 3334; *Crowell v. Benson*, [285 U.S. 22, 52 S.Ct. 285]. Moreover, as a personal right, Article III's guarantee of an impartial and independent federal adjudication is subject to waiver, just as are other personal constitutional rights that dictate the procedures by which civil and criminal matters must be tried.

*Schor*, 478 U.S. at 848–49, 106 S.Ct. at 3255–56.

Decisions of the Secretary with respect to "matters arising under chapter 37 of [title 38]," the Loan Guaranty Program, have been, and remain, subject to challenge in state and Article III federal courts. *See* 38 U.S.C. § 211(2)(C). Indeed, 38 U.S.C. § 1820 (1988) specifically provides that:

> (a) Notwithstanding the provisions of any other law, with respect to matters arising by reason of [chapter 37], the [Secretary] may—
>
> > (1) sue and be sued in the [Secretary's] official capacity in any court of competent jurisdiction, State or Federal. . . .

The net result of these statutory provisions is that appellant could have taken the initiative and challenged the Secretary's assertion that she owed a debt to the United States by suing the Secretary in an appropriate state court or in a United States district court. Alternatively, appellant could have waited until the Secretary sought judicial enforcement of the debt and defended by collaterally attacking the Indiana judgment. The availability of an alternative forum is not unique to suits under the federal Loan Guaranty Program. *See Young v. Derwinski*, 1 Vet.App. 70 (1990) (claimant dissatisfied with the VA's resolution of an insurance claim can either sue in a United States district court or appeal to the BVA and seek judicial review in this Court of an adverse BVA decision.)

In *Schor*, the Supreme Court was faced with a situation similar to that presented by this appeal; the Court held that the litigant's

> election to forgo his right to proceed in state or federal court on his claim and his decision to seek relief instead in a CFTC [Commodity Futures Trading Commission] reparations proceeding constituted an effective waiver. . . . Thus, Schor had the option of having the common law counterclaim against him adjudicated in a federal Article III court, but, with full knowledge that the CFTC would exercise jurisdiction over that claim, chose to avail himself of the quicker and less expensive procedure Congress had provided him. In such circumstances, it is clear that Schor effectively agreed to an adjudication by the CFTC of the entire controversy by seeking relief in this alternative forum.

*Schor*, 478 U.S. at 849–50, 106 S.Ct. at 3255–56.

Appellant here also chose to forgo a right to proceed in state or federal court; instead, she exercised the right afforded her by 38 C.F.R. § 1.911(c) to "informally dispute the existence or amount of the debt." When that informal dispute was not resolved in her favor, appellant sought review by the BVA and then by this Court. By choosing to follow this route, it would appear that, under *Thomas*, appellant may have waived any right she might have had to a determination by an Article III court

on her collateral attack upon the Indiana judgment.

### 4.

■ Our holding that we may constitutionally exercise our appellate jurisdiction does not end our jurisdictional inquiry. This Court is a court of review and our jurisdiction is derivative; we can review only what was—or should have been—decided below. We must first determine whether the BVA adequately addressed and resolved the issue raised by appellant or whether a remand is required.

The comprehensive regulatory scheme for the administration of benefits under the Loan Guaranty Program compels the conclusion that decisions underlying a debt, *i.e.*, the existence or amount of a debt, may be appealed to the Board of Veterans' Appeals. Indeed, 38 C.F.R. § 1.911 not once but twice notes that a debtor may appeal "the decision underlying the debt" to the BVA. *See* 38 C.F.R. § 1.911(c)(3) and (f)(1). The Board has jurisdiction to hear such appeals under 38 U.S.C. § 4004 and, because this Court's jurisdiction derives from the Board's jurisdiction, *see* 38 U.S.C. § 4052(a), we have appellate jurisdiction to hear appeals of the BVA's decisions with respect to the existence or amount of a debt.

By its statement of the issue to be considered in this case, the Board purported to confine itself solely to a review of the action of the Committee on the waiver request. The actual decision, however, ranges far beyond the self-described limit. Indeed, the Board specifically directed

> its attention to contentions raised by the appellant concerning her lack of notice concerning the default and also her lack of interest in the subject property as a result of the divorce determination. The Board has reviewed all the evidence in this case concerning the lack of notice. We agree that, under the circumstances in this case, when ·... the appellant moved to Florida and remarried, her address would not have been reasonably ascertainable. Moreover, attempts were made to notify the veteran and the appellant in 1981. Therefore, the Board

agrees that the requirements pertaining to notice and due process have been met. *Barbara C. Smith,* loc. no. 004165, at 6–7 (BVA Feb. 13, 1990).

Although the Secretary argues that the Board confined itself to the Committee's decision on waiver, we cannot agree. The Board stated that it "reviewed all the evidence in this case concerning the lack of notice" and specifically ruled that "the requirements pertaining to notice and due process have been met." The disclaimer that the validity of appellant's debt was not at issue is belied by the BVA's decision in which the issue was clearly articulated and definitively resolved against appellant. We have appellate jurisdiction to review that decision under 38 U.S.C. § 4052(a).

### B. REVIEW ON THE MERITS

This is not a case in which the VA can seek indemnification from a veteran who defaulted on a VA guaranteed loan. This case arises by virtue of a right of subrogation resulting from a judgment in a foreclosure proceeding entered by a state court. It is not disputed that the Secretary paid the guaranty to Citicorp, the successor in interest to the original mortgagee. R. at 78. As 38 U.S.C. § 1832 and 38 C.F.R. § 36.4323 (1990) make clear, any right the Secretary has to collect the deficiency from appellant is not original but derivative. "[I]f the Secretary makes such a payment, the Secretary shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guaranty." 38 U.S.C. § 1832(a)(1). The Secretary, therefore, stands in the shoes of the successor mortgagee, and we must look to the successor mortgagee's rights resulting from the Indiana judgment to determine whether there is a debt which the Secretary can collect from appellant.

### 1.

■ Appellant's first argument is that she was absolved of any personal liability on the note when she divested herself of ownership of the property and executed a quitclaim deed in return for an agreement from her then former husband to hold her harmless. This argument misperceives the

precise nature of the transaction or transactions in which appellant was involved.

Appellant's liability to the successor mortgagee, and thus to the Secretary by virtue of the right of subrogation, stems not from her original ownership of the property which secured the loan but from the loan itself. The Indiana divorce decree does not by its terms purport to release appellant from liability on the note; moreover, it could not have done so because the original mortgagee, an indispensable party, was not made a party to the action. *Copeland v. Copeland,* 145 Ind.App. 73, 248 N.E.2d 571 (1969) (citing *Shula v. Shula,* 235 Ind. 210, 214, 132 N.E.2d 612 (1956)). Simply put, there is no basis in fact or in law for the argument of appellant that her debt to the mortgagee was canceled upon her relinquishment of interest in the property. Appellant is in a position no different from that in which all too many former homeowners have found themselves in recent years when subsequent purchasers defaulted on assumed home loans subject to VA guaranties. *See, e.g., Whitney,* 602 F.Supp. 722 (W.D.N.Y.1985); *Vail v. Derwinski,* 742 F.Supp. 1039 (D.Minn.1990), *appeal filed,* No. 90–5559 (8th Cir. Nov. 26, 1990), *appeal filed,* No. 91–1026 (8th Cir. Jan. 4, 1991).

The Board properly concluded that even though the divorce decree terminated appellant's interest in the property, "the appellant remained liable to the loan holder on the mortgage agreement. This liability remained in effect even when the appellant no longer had a property interest in the subject property." *Smith,* loc. no. 004165, at 7.

### 2.

Appellant's second argument consists of a collateral attack on the Indiana judgment on the ground that the Indiana state court did not have jurisdiction over her person. Article IV, Section 1, of the Constitution provides that "Full Faith and Credit shall be given in each State to the ... judicial Proceedings of every other State." Similarly, 28 U.S.C. § 1738 (1988) provides that "judicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or possession from which they are taken." Therefore, this Court, "a court within the United States," is required to give full faith and credit to the judgment entered by the Indiana state court. *See, e.g., Miniafee v. United States,* 17 Cl.Ct. 571, 574 (1989) (citing *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982)) (holding that the Claims Court must give full faith and credit to a state court judgment).

As the Supreme Court has noted: "The concept of full faith and credit is central to our system of jurisprudence." *Underwriters Nat'l Assurance Co. v. North Carolina Life and Accident and Health Ins. Guar. Ass'n,* 455 U.S. 691, 703, 102 S.Ct. 1357, 1365, 71 L.Ed.2d 558 (1982). "[A] judgment is entitled to full faith and credit ... when ... those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke,* 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963). However, the full faith and credit doctrine is not without limits.

> [B]efore a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given.

*Underwriters Nat'l Assurance Co.,* 455 U.S. at 705, 102 S.Ct. at 1366.

The essence of appellant's collateral attack is that she was entitled to actual notice of the Indiana foreclosure proceedings under the Due Process Clause of the Fourteenth Amendment to the Constitution. In the absence of such notice, the argument continues, the Indiana court lacked jurisdiction over her person; therefore, the Indiana court could not extinguish her interest in property securing a note which, in turn, is the basis of the alleged debt to the United States. The Secretary does not dispute appellant's contention that the first she learned about the Indiana proceedings

was in 1988 when the VA notified her that she was in debt to the United States. Since appellant never appeared before the Indiana state court, that issue was never litigated. Therefore, whether the Indiana state court acquired *in personam* jurisdiction over appellant through notice of process by publication must be resolved in order to determine whether the judgment is entitled to full faith and credit.

> Where the defendant has appeared in the original action, the judgment in that cause is res judicata on the issue of personal jurisdiction, whether the defendant actually litigated the question or merely permitted it to pass without objection.... In those case [sic], however, in which the defendant makes no appearance and the judgment goes by default, the defendant may defeat subsequent enforcement in another forum by demonstrating that the judgment issued from a court lacking personal jurisdiction. Of course, "the burden of undermining [the judgment] rests heavily upon the assailant," *Williams v. North Carolina*, 1945, 325 U.S. 226, 233–34, 65 S.Ct. 1092, 1097, 89 L.Ed. 1577.

*Hazen Research Inc. v. Omega Minerals, Inc.*, 497 F.2d 151, 153–54 (5th Cir.1974).

■ When foreclosure proceedings were initiated in Indiana and under Indiana law, it is not disputed that appellant resided in Florida. The judgment is not a model of clarity, but it appears that the Indiana court intended that its judgment be both *in rem* as to the property and *in personam* as to the individual defendants. There can be no question as to the validity of the *in rem* judgment with respect to the property because it was within the jurisdiction of the Indiana court, but that does not end the matter. As Justice Marshall noted in *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983): "Our cases have required the State to make efforts to provide actual notice to all interested parties comparable to the efforts that were previously required only in in personam actions." *Id.* at 796 n. 3, 103 S.Ct. at 2710 n. 3. Thus, regardless whether the Indiana judgment is viewed as *in rem, in personam*, or a combination of both, the issue, properly framed, is whether appellant was entitled to receive "actual notice" in order to satisfy the Constitutional requirement of due process.

Service on appellant was by publication, which is permitted in a foreclosure proceeding under Indiana law. *United States v. Murdock*, 627 F.Supp. 272, 275 (N.D.Ind. 1985). The Supreme Court, in *Mennonite*, considered the effect of notice by publication in an analogous situation where the real property, also located within the State of Indiana, was the subject of a tax sale. In the words of Justice O'Connor, who was joined in her dissent by Justice Powell and then-Justice Rehnquist, the majority held

> that before the State conducts *any* proceeding that will affect the legally protected property interests of *any* party, the State must provide notice to that party by means certain to ensure actual notice as long as the party's identity and location are "reasonably ascertainable."

*Mennonite*, 462 U.S. 791, 800–01, 103 S.Ct. 2706, 2712–13, 77 L.Ed.2d 180 (1983) (O'Connor, J., dissenting) (quoting majority opinion, 462 U.S. at 800, 103 S.Ct. at 2712). After *Mennonite*, therefore, notice by publication satisfies the Due Process Clause of the Fourteenth Amendment only when the party's identity and location are not "reasonably ascertainable."

It bears repeating that this Court is a court of review, not a trial court. Our task is not to determine in the first instance whether appellant's address was reasonably ascertainable. Rather, it is our responsibility to determine whether the BVA's finding that "her address would not have been reasonably ascertainable," *Smith*, loc. no. 004165, at 6–7, was clearly erroneous. 38 U.S.C. § 4061(a)(4) (1988). The record indicates that the attorney for the original mortgagee filed an affidavit, R. at 41–42, stating: "Diligent search has been made for said Defendants, but said Defendants cannot be found and plaintiff reasonably believes that the whereabouts of said Defendants cannot be discovered upon further reasonable inquiry." R. at 41. Based upon this affidavit, the Indiana court authorized service by publication for both appellant and her former husband. Appellant's former husband entered an ap-

pearance; appellant did not. The judgment of the Indiana court states that appellant "is in default for failing to plead or otherwise defend." R. at 55.

The record before this Court, and presumably before the Board, is totally devoid of any evidence which would provide a basis for questioning the representations contained in the affidavit of counsel that a "diligent search" and a "reasonable inquiry" were conducted as to appellant's location. Although appellant in her brief to this Court opines that "[h]er address in the State of Florida was reasonably ascertainable through either her former husband or her local counsel," Br. at 11, appellant has offered nothing of evidentiary value which would support her conjecture or counter the affidavit. Bare allegations that her former husband would have known or should have been asked or that her counsel for her divorce should have been contacted to determine appellant's location are inadequate and do not satisfy the burden which "rests heavily" upon one seeking to collaterally attack a judgment of a state court. "A judgment presumes jurisdiction over the subject matter and over the persons." *Cook v. Cook*, 342 U.S. 126, 128, 72 S.Ct. 157, 159, 96 L.Ed. 146 (1951).

We are compelled to hold on this record that the BVA was not clearly erroneous when it concluded that appellant's location in Florida in 1981 was not reasonably ascertainable and that notice by publication pursuant to the law of the State of Indiana was sufficient notice of process to satisfy the Due Process Clause of the Fourteenth Amendment. Therefore, the Indiana state court exercised *in personam* jurisdiction over appellant and the judgment of that court is entitled to full faith and credit. The decision of the BVA that appellant was indebted to the United States is affirmed.

## III.

APPELLANT'S CHALLENGE TO THE SECRETARY'S REFUSAL TO WAIVE THE FULL AMOUNT OF THE DEFICIENCY

### A. JURISDICTION

■ In addition to challenging "the existence or amount of the debt," a prospec-

tive debtor may seek a waiver of the collection of the debt. 38 C.F.R. § 1.911(c). The procedures for making a decision on a request for a waiver are not the same as those used by the VA to adjudicate a claim for benefits. Pursuant to 38 C.F.R. §§ 1.955–1.970 (1990), decisions on waivers are committed to a Committee on Waivers and Compromises (Committee) established in each VA regional office. Such committees are specifically authorized "to consider and determine ... settlement, compromise and/or waiver concerning ... [d]ebts arising out of the loan program under 38 U.S.C. Ch. 37 after liquidation of security, if any." 38 C.F.R. § 1.956(a)(1)(ii) (1990). Since the Committees operate in a manner and under authority wholly distinct from that governing ordinary benefits decisions, the authority with respect to the appeal of Committee action is also distinct. Section 1.958 provides that a "decision ... denying waiver of all or a part of an overpayment is subject to appeal." 38 C.F.R. § 1.958 (1990). Prospective debtors under the Loan Guaranty Program are reminded of this authority by 38 C.F.R. § 1.911(f)(3): "Right to appeal a waiver decision, in § 1.958." *See also* 38 C.F.R. § 19.2 (1990) (Board's appellate jurisdiction includes claims involving waiver or recovery of overpayments). Again, this Court's appellate jurisdiction is derivative in that it has exclusive jurisdiction to review BVA decisions. 38 U.S.C. § 4052(a). Since the BVA has specific authority to review waiver decisions, this Court, in turn, has appellate jurisdiction to review the BVA's decisions on waivers.

### B. REVIEW ON THE MERITS

■ Once the Secretary determined that appellant did in fact and law owe the debt, Supp.R. at 1–2, appellant's request for a waiver was referred to the Regional Office Committee to determine if appellant was entitled, in "equity and good conscience," to a complete or partial waiver. *See* 38 U.S.C. § 3102(b); 38 C.F.R. § 1.964(a)(2) (1990). The statutory phrase "equity and

good conscience," without any other limiting or definitional statutory provisions, effectively commits decisions on requests for waivers to the discretion of the Secretary. Our review with respect to the statutory standard is therefore limited to determining whether the Secretary abused his discretion in refusing to waive the entire amount of the debt. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985); *contra United States v. Church*, 736 F.Supp. 1494 (N.D.Ind.1990) ("This court can clearly determine [under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1988)] whether the Administrator was required by § 3102 to waive Church's liability because collection would be against equity and good conscience.").

The statutory phrase "equity and good conscience" does not, however, stand in isolation. By regulation, the Secretary has defined the phrase and issued guidance as to its application to particular cases by the Committees.

> The phrase 'equity and good conscience' means arriving at a fair decision between the obligor and the Government. In making this determination, consideration will be given to the following elements, which are not intended to be all inclusive:
>
> (1) *Fault of debtor....*
> (2) *Balancing of faults....*
> (3) *Undue hardship....*
> (4) *Defeat the purpose....*
> (5) *Unjust enrichment....*
> (6) *Changing position to one's detriment....*

38 C.F.R. § 1.965 (1990).

■ Waiver decisions, and the review of such decisions by the BVA, are subject to review by this Court to determine whether the statutory standard was applied in accordance with the regulatory guidance or whether the decision was made in an arbitrary or capricious manner. 38 U.S.C. § 4061(a)(3)(A) (1988); *see Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) (holding that a decision committed to the "absolute discretion" of an agency head is subject to judicial review when the agency has promulgated regulations governing the exercise of such discretion.)

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the· relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)).

■ In deciding appellant's request for a waiver, the Committee stated as follows:

> We have reviewed the circumstances surrounding the occurrence of this debt and find no material fault on your part, because you awarded the property to your husband in the divorce proceedings in good faith. We have reviewed your financial statement and find that you could repay at least part of the debt within a reasonable time. A decision has been made to grant a waiver of part of the principal indebtedness in the amount of $5,000.00. You will remain liable for the balance.

R. at 109.

Pursuant to 38 C.F.R. § 1.958, appellant appealed to the Board which affirmed the decision of the Committee to grant only a partial waiver.

> In determining the issue of whether or not repayment of the loan guaranty indebtedness would violate the principle of equity and good conscience, consideration will be given to all the cited elements with emphasis on the concept of undue hardship.... In order to find undue hardship, the evidence must demonstrate the appellant's ability to provide herself and any dependents with the necessities of life is seriously impaired....

In this regard, the Board notes that the financial status report prepared in May 1988 disclosed a positive monthly balance of approximately $200. We are aware that on the subsequent financial status report prepared on October 1988, she listed installment contracts and other debts with an unpaid balance of $13,505 and a total monthly amount due of $413. The Board noted, however, that none of these debts were reported past due.... Also, the record indicates that the appellant is still a young woman who can reasonably anticipate many years of substantially gainful employment in her profession as a registered nurse. Therefore, considering the amount of the debt, the Board's judgment is that the appellant should be able to repay the loan guaranty debt in installments without impairing her ability to provide for the basic necessities of life.

*Smith*, loc. no. 004165, at 7.

This well-reasoned discussion demonstrates that the decision to waive only $5,000 of the total indebtedness was neither arbitrary, capricious, nor an abuse of the Secretary's discretion.

### IV.

### CONCLUSION

We hold that this Court has jurisdiction to review the conclusions of the Board (1) that appellant owed a debt to the United States, and (2) that the recovery of a portion of that debt was not against equity and good conscience. The Court further holds that the BVA did not err when it concluded that the divorce decree did not relieve appellant of liability on the underlying debt and that appellant has failed to carry the burden of demonstrating that the Indiana state court did not acquire jurisdiction of her person in the foreclosure proceeding through notice of process by publication. The Court also holds that the decision that recovery of all but $5,000 of the deficiency would not offend equity or good conscience was neither arbitrary, capri-

cious, nor an abuse of discretion. Therefore, the BVA decision of February 13, 1990, is affirmed.

*It is so Ordered.*