**Dennis P. CULLEN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 92–1300.**

United States Court of Veterans Appeals.

Oct. 26, 1993.

James C. McKay, Washington, DC, was on the pleadings, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Jacqueline E. Monroe, Washington, DC, were on the pleadings, for appellee.

Before FARLEY, MANKIN and IVERS, Judges.

MANKIN, Judge:

Dennis P. Cullen appeals the July 6, 1992, Board of Veterans' Appeals (BVA or Board) decision which denied entitlement to waiver of recovery of an overpayment of disability compensation benefits. The Secretary filed a motion for summary affirmance, to which the appellant submitted a response. The Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, we vacate the July 1992 decision of the BVA and

remand the matter for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

The appellant served on active military duty from September 21, 1967, to September 15, 1970. In 1974, the appellant was rated 50% disabled for schizophrenic reaction, paranoid type, and in 1976, this disability rating was increased to 70%. In March 1977, the appellant notified the Veterans' Administration (now Department of Veterans Affairs) (VA) of his recent marriage and requested that his disability award be adjusted to provide for a dependent spouse. The VA made the adjustment in May 1977.

The appellant was divorced in December 1982, and the New York City VA Regional Office (RO) received a copy of the appellant's divorce judgment in January 1983. Despite this notice, the RO took no action and the appellant continued to receive benefits at a rate which included a spousal allowance. In January 1990, the Albuquerque RO received photocopies of three letters written by the appellant dated in January, June, and November of 1983 notifying the VA that he was still receiving the spousal allowance. In March 1990, action was taken to remove the appellant's former wife retroactively as a dependent spouse effective January 1, 1983. The appellant was notified at this time that an overpayment had been created in the amount of $4,837.00. On March 14, 1990, the appellant requested a waiver of the overpayment. In April 1990, the appellant submitted a Financial Status Report which revealed his total monthly net income to be $710.00 and his total monthly expenses to be $700.00. In June 1990, the Committee on Waivers and Compromises (Committee) declined to waive the overpayment and concluded that while the VA was at fault, the appellant was at greater fault since he had continued to accept and cash the monthly benefits checks. In addition, the Committee observed that requiring restitution by the appellant would not constitute an undue financial hardship since the appellant's Financial Status Report showed that his income was greater than his expenses. The Committee concluded that there was no showing that the appellant changed his position by relying on the greater benefit that was paid.

A March 8, 1991, BVA decision remanded the appellant's case to the RO for a determination of whether the overpayment of disability compensation benefits resulted from sole administrative error by the VA. The RO subsequently determined that the appellant bore "a large degree of fault in the creation" of the overpayment of compensation benefits. The case was returned to the Board and the July 6, 1992, BVA decision concluded that recovery of the overpayment in the amount of $4,837.00 would not violate the principles of equity and good conscience.

## II. ANALYSIS

Pursuant to 38 U.S.C.A. § 5302(a) (West 1991), "[t]here shall be no recovery of payments or overpayments ... of any benefits ... whenever the Secretary determines that recovery would be against equity and good conscience." However, before it may be determined whether "equity and good conscience" afford waiver, there must not be any "indication of fraud, misrepresentation or bad faith" on the part of the claimant in connection with the claim. *See* 38 U.S.C.A. § 5302(c) (West 1991).

The BVA acknowledged that there was no fraud, misrepresentation, or bad faith on the part of the appellant; therefore, it proceeded to inquire into whether collection of the overpayment would be against "equity and good conscience." According to 38 C.F.R. § 1.965(a) (1992), "[t]he phrase *equity and good conscience* means arriving at a fair decision between the obligor and the Government." In making this determination, consideration is to be given to various elements which are not intended to be all-inclusive. These elements are the fault of the debtor, where such actions contribute to the creation of the debt; balancing of faults, where VA fault is also involved; undue hardship, where collection of the debt deprives the debtor of basic necessities; the question whether collection

of the debt would defeat the purpose of the VA benefit; the question whether failure to make restitution would result in unjust enrichment; and the question whether reliance on VA benefits resulted in relinquishment of a valuable right, i.e., changing one's position to one's detriment. *See* 38 C.F.R. § 1.965(a)(1)–(6) (1992).

■■■ This Court held that "[w]aiver decisions, and the review of such decisions by the BVA, are subject to review by this Court to determine whether the statutory standard was applied in accordance with the regulatory guidance or whether the decision was made in an arbitrary or capricious manner." *Smith v. Derwinski*, 1 Vet.App. 267, 279 (1991). The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made." *Smith*, 1 Vet.App. at 279.

Instead of giving careful consideration to the various elements that comprise "equity and good conscience," the BVA merely stated:

> The veteran has provided a Financial Status Report reflecting his monthly expenditures and income. As to financial hardship, such a finding would be justified if collection would deprive the veteran of food, clothing, shelter, or other basic necessities. Since the veteran reports monthly income which exceeds his monthly expenses by a small amount, the Board finds that to demand payment of the indebtedness, in reasonable monthly amounts, would not be unfair, unconscionable, or unjust, and it would not defeat the purpose of the benefit granted to him by the VA. Moreover, the veteran was not entitled to disability compensation benefits which included a spousal allowance following his divorce; further, failure to make restitution would result in unfair gain to the veteran. Accordingly, the Board does not find that it would be against the principles of equity and good conscience to require repayment of the debt.

*Dennis P. Cullen*, BVA 92–___, at 7–8 (July 6, 1992).

The Court finds that the BVA decision is not capable of being judicially reviewed due to its failure to provide adequate "reasons or bases" for its determination that recovery of the overpayment of disability compensation benefits would not violate the principles of equity and good conscience. *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990). The record reveals that there were numerous factors that the Board neglected to address in its analysis. "A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor 'clear enough to permit effective judicial review,' nor in compliance with the statutory requirements." *Id.* at 57.

With respect to fault, the evidence shows that although it received timely notification of the appellant's divorce in January 1983, the RO failed to take the appropriate action and adjust the appellant's benefit checks. Nonetheless, the Board contends that the VA was not solely at error since the appellant continued to accept the checks. However, due to the absence of reasons or bases, there is no indication that the BVA, in weighing the fault of the debtor against the fault of the VA, gave any consideration to the appellant's financial predicament and the magnitude of his disability. Realistically, given that the appellant's meager income of $710.00 a month consists entirely of VA benefits checks, to deprive him of this money would deprive him of his sole source of income. Further, the VA is expecting someone who was rated 70% disabled more than 15 years ago due to serious psychological problems to act more responsibly than the VA itself. It was the VA's failure to act that initially created the overpayment, and it was the continued efforts of the appellant—writing three letters to the New York City RO in 1983 and ultimately submitting photocopies of these letters to the Albuquerque RO in January 1990—that eventually rectified the error.

With respect to undue hardship, an analysis of the appellant's Financial Status Report submitted in April 1990 reveals not only that the appellant's sole income consists of the $710.00 he receives each month from the VA, but that he is unemployed, he has no savings, no "cash on hand," and his only possession is his 1985 Volkswagen Jetta. His monthly expenses include his rent, food, utilities and heat, telephone, car insurance, and storage space, but the appellant has allocated no money toward health insurance, clothing, or medical needs. Yet, the Board maintains without reasons or bases that the appellant would experience no financial hardship if required to repay the VA. And, despite the fact that the appellant has no money for clothing or medical attention, the Board maintains that the appellant would not be deprived of basic necessities were he required to repay his debt.

In addition, the Board contends that the appellant would be unjustly enriched were waiver allowed. However, the extra money that the appellant received, approximately $50.00 a month, hardly constitutes the type of windfall that one would consider unfair gain. More importantly, the Board fails to consider the appellant's future prospects in its calculation. As an unemployed 44–year–old who has been rated 70% disabled for paranoid schizophrenia, he cannot reasonably anticipate gainful employment in the future. If the appellant were ever to require medical care, he would be rendered destitute while trying to survive on an income of $710.00 a month, less the monthly repayments the VA would require him to make. Because it would take the appellant the next 40 years to repay the $4,837.00 to the VA given his current net income, requiring repayment would certainly defeat the purpose for which the appellant receives VA disability compensation benefits.

The appellant contends that the BVA misapplied the fault standard in its evaluation by stating that 38 U.S.C.A. § 5302(c) (West 1991) and 38 C.F.R. § 1.965 (1992) are inconsistent. Appellant's Br. at 6–7. However, not only is any possible discrepancy between the statute and the regulation not at issue here, but the question need not be addressed by this Court since this case will be remanded to the Board to supply adequate reasons or bases for its determination.

## III. CONCLUSION

Because the Court finds that the BVA's discussion and evaluation of the regulatory elements that comprise "equity and good conscience," are grossly inadequate, we are compelled to vacate the Board's decision and remand this case so that the Board may provide a complete analysis of these six regulatory elements, including sufficient "reasons or bases" for its conclusions. The Secretary is reminded that remand is not "merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement ... A remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991).

The July 6, 1992, BVA decision is VACATED, and the appellant's claim is REMANDED for proceedings consistent with this Court's opinion.