**Mae I. RIDINGS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 92–1193.**

United States Court of Veterans Appeals.

July 7, 1994.

Mae I. Ridings, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, David W. Engel, Deputy Asst. Gen. Counsel, and Adam K. Llewellyn were on the brief for appellee.

Before NEBEKER, Chief Judge, and KRAMER and HOLDAWAY, Judges.

KRAMER, Judge, filed the opinion of the Court, in which NEBEKER, Chief Judge, joined.

HOLDAWAY, Judge, filed a dissenting opinion.

KRAMER, Judge:

Appellant, Mae I. Ridings, appeals a May 14, 1991, decision of the Board of Veterans' Appeals (BVA) which denied appellant's claim of entitlement to waiver of recovery of an overpayment of improved death pension benefits on the ground that recovery would not be against equity and good conscience. The Court has jurisdiction under 38 U.S.C. § 7252.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The veteran, Thomas P. Rattenni, served on active duty from April 1943 to November 1945 and from October 1950 to November 1950. R. at 6. The veteran died in December 1978. R. at 6. In February 1979, the VA awarded appellant death pension benefits. In March 1979, the VA denied service connection for the cause of the veteran's death. R. at 16.

Appellant submitted statements of income and net worth to the VA in April 1980 and April 1983 which stated that she was receiving no Social Security income and did not expect to receive it for the next calendar year. R. at 19, 24. She began receiving improved pension benefits in May 1983. R. at 28. Appellant's income statements from October 1986, August 1987, September 1988, and September 1989 all stated that she was not receiving any Social Security income. R. at 30, 37, 41, 50.

On September 25, 1989, the VA wrote a letter to appellant proposing the termination of pension benefits, stating that the Social Security Administration (SSA) had informed the VA that appellant had been receiving $475.90 monthly from SSA since June 1, 1989. The VA informed appellant that she was in overpayment status and that she would continue to receive payments for a 60-day period until a final decision was made. However, appellant was cautioned that should she continue accepting payment and a determination was made that pension benefits would be terminated, appellant would be responsible for paying back the amount of overpayment. R. at 54–55. A report of contact dated September 29, 1989, stated that appellant had called the VA to report that she was awarded gross monthly Social Security income of $475.00, effective in July 1989. The VA noted in the report that appellant was also advised of possible overpayment and cautioned not to cash any more pension checks. R. at 57.

On October 6, 1989, the SSA informed the VA that appellant had been receiving two types of Social Security checks which equaled a gross amount of $475.90 per month. The first type was for appellant's personal benefits in the amount of $117.90 monthly, which she began receiving in November 1986, and the second type was for benefits as a widow in the amount of $358.00 monthly, which she began receiving in June 1989. R. at 59–62. On December 6, 1989, the VA terminated appellant's death pension, effective July 1, 1989, because her annual income exceeded the amount allowable for receipt of pension benefits. R. at 64–65. Appellant was advised that the adjustment resulted in an overpayment of benefits in the amount of $5,307.00, and that she should pay that amount to the VA within 30 days. She was also advised of her right to request a waiver of the debt. R. at 68.

In February 1990, an attorney representing appellant wrote a letter to the VA stating that appellant was requesting a waiver of the debt owed to the VA. The attorney asserted that appellant inadvertently did not report her Social Security income because "it was for [her] granddaughter" and because she "had been enduring an insurmountable amount of stress." R. at 74. The attorney also stated that payment would cause undue financial hardship on appellant. *Id.* In March 1990, appellant submitted a financial status report indicating that her expenses exceeded her income because she was no longer receiving death pension benefits from the VA. She stated that she was in debt because she had incurred: (1) a mortgage in the amount of $25,000 (October 1988), (2) another mortgage in the amount of $13,000 (October 1989), and (3) a loan in the amount of $3,200 to pay expenses (December 1989). R. at 70–72.

On May 7, 1990, a hearing was held before the Regional Office Committee on Waivers and Compromises (the Committee). Appellant testified that she did not report her Social Security income to the VA because she was not aware that it had to be reported. R. at 81. The Committee pointed out to appellant that the income forms she filled out every year specifically asked how much Social Security income she had been receiving, and she put zero on each form, including those from the years she was receiving Social Security income. R. at 81–85. She replied that she "just put zero on everything" because the forms were confusing. R. at 84–85. She also clarified that her Social Security check is not for her granddaughter, but is for her own disability. R. at 91–92. On May 17, 1990, the Committee, after considering all the elements of 38 C.F.R. § 1.965(a) (1993), found that collection of the debt would not violate the standard of equity and good conscience. The Committee found no proof of fraud, misrepresentation, or bad faith on the part of the debtor, but did find that "[c]re-

ation of the overpayment was due solely to the fault of the debtor" and that appellant "should have known that she was not entitled to the full amount of VA benefits awarded." R. at 107.

Appellant filed a Notice of Disagreement in June 1990, and a VA Form 1–9 (appeal to the BVA) in September 1990. R. at 112, 129. Appellant noted in her appeal that she "did not intentionally nor [sic] fraudulently accept the benefits from the [VA]" and that she assumed she was entitled to the benefits. R. at 129.

On May 14, 1991, the BVA denied waiver of indebtedness, determining that recovery of such indebtedness would not be against equity and good conscience. The BVA did not address whether there was an indication of fraud, misrepresentation, or bad faith which would preclude waiver under 38 U.S.C. § 5302, but instead based its decision solely on the application of the elements to be considered in the determination of whether recovery would be against equity and good conscience, pursuant to 38 C.F.R. § 1.965(a).

## II. ANALYSIS

■ Pursuant to 38 U.S.C. § 5302(a), "[t]here shall be no recovery of payments or overpayments ... of any benefits under any of the laws administered by the Secretary whenever the Secretary determines that recovery would be against equity and good conscience." However, this waiver of indebtedness is precluded if, in the Secretary's opinion, "there exists in connection with the claim for such waiver an indication of fraud, misrepresentation or bad faith on the part of the [claimant]." 38 U.S.C. § 5302(c). Thus, a negative determination as to whether there is an indication of fraud, misrepresentation or bad faith must be made before the elements involved in the determination of whether recovery would be against equity and good conscience may be considered. See 38 C.F.R. § 1.965(a). "Waiver decisions, and the review of such decisions by the BVA, are subject to review by this Court to determine whether the statutory standard was applied in accordance with the regulatory guidance or whether the decision was made in an arbitrary and capricious manner." Smith v. Derwinski, 1 Vet.App. 267, 279 (1991). See 38 U.S.C. § 7261(a)(3)(A); Cullen v. Brown, 5 Vet.App. 510, 512 (1993).

■ Although the uncontroverted facts in this case show that appellant indicated at least three times in writing and one time by phone that she was not receiving that which she was receiving, the BVA's decision contained no discussion of whether these facts resulted in a preclusion of waiver because of any indication of fraud, misrepresentation or bad faith under 38 U.S.C. § 5302(c). Furthermore, in ultimately deciding not to grant a waiver, the BVA failed to discuss, or provide reasons and bases for not discussing, all of the elements to be considered in determining whether recovery would be against equity and good conscience, pursuant to 38 C.F.R. § 1.965(a). Thus, the matter must be remanded to the BVA to initially determine whether waiver is precluded under 38 U.S.C. § 5302(c). If not, the BVA must then address all the elements enumerated in 38 C.F.R. § 1.965(a) (applied to determine whether recovery would be against equity and good conscience): (1) the fault of the debtor; (2) the balancing of faults; (3) undue hardship; (4) whether the purpose of the benefits would be defeated; (5) unjust enrichment; and (6) whether the person asking for the waiver had detrimentally changed position. The BVA is reminded that the list of elements is "not intended to be all inclusive." Id.

## III. CONCLUSION

For the foregoing reasons, and after consideration of the briefs and the record on appeal, the Court holds that the BVA decision denying waiver was contrary to law. See 38 U.S.C. § 7261(a)(3); Smith, supra. The BVA decision is VACATED and the matter REMANDED for further proceedings consistent with this opinion.

HOLDAWAY, Judge, dissenting:

It is true, as is stated in the majority opinion, that the BVA did not specifically find, inter alia, any indication of "misrepresentation" by appellant, although had they made such a finding it certainly would have

been plausible. Not having done so, the six elements noted in the majority opinion had to be considered in determining whether recovery would be against equity and good conscience. The BVA opinion specifically noted the six elements, which of course means they did consider them, and, contrary to the statement in the majority opinion, did discuss *the elements that were relevant,* i.e., fault of the debtor and undue hardship. Under the facts of *this* case, none of the other elements was even remotely raised by the record. Moreover, the catchall phrase that the list of the six elements is not intended to be "all inclusive" is obviously limited by the doctrine of *ejusdem generis* to elements of a similar nature. This is an easy case. The only reason that there was an overpayment, which now must be repaid, is that the appellant on several different occasions failed to include Social Security income on a form that specifically and unambiguously required such income be listed. The "fault" was totally and completely hers. Interestingly enough, the appellant has never denied that. The BVA in this case wrote a thorough and well-reasoned decision as to why they elected not to exercise the discretion that is solely theirs to waive the overpayment. The decision should be affirmed.