**Daniel L. KAPLAN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–611.

United States Court of Veterans Appeals.

April 23, 1996.

Daniel L. Kaplan, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Michael Butler were on the brief, Washington, DC, for appellee.

Before FARLEY, MANKIN, and IVERS, Judges.

IVERS, Judge:

The pro se appellant, veteran Daniel L. Kaplan, appeals a June 15, 1994, decision of the Board of Veterans' Appeals (BVA or Board) requiring the partial repayment of a loan indebtedness in the amount of $4,145.26 plus accrued interest. *Daniel L. Kaplan,* BVA 94–09229 (June 15, 1994). The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will affirm the Board's decision to require partial repayment of the loan indebtedness.

## I. FACTUAL BACKGROUND

The appellant served on active duty in the United States Army from November 1942 to December 1945, and from November 1951 to March 1952. Record (R.) at 36; Appellant's Reply Brief (Br.) at 7. On January 15, 1986, the appellant obtained a VA guaranteed deed of trust, in the amount of $55,499.00, from the National Bank of La Jolla ("the lender") to purchase a house in Bakersfield, California. R. at 83, 86. As a prerequisite for obtaining the deed of trust, the appellant executed a VA Form 26–1802, Application for Home Loan Guaranty, in which he certified and agreed to repay VA for any claim that it would be required to pay the lender in the event of a default. R. at 88, 92–93. Also under the terms of the guaranty (Provis. 31(b) of the application), the appellant agreed that in order to be relieved from liability to VA, he would have to find a credit-worthy buyer who was willing to assume his payment obligation to the lender. R. at 92.

On the VA Form 26–1843, Certificate of Reasonable Value, issued on January 13, 1986, the estimated value of the property was $57,500.00. R. at 98. As a general condition of that certification, VA specifically stated: THE VETERANS ADMINISTRATION DOES NOT ASSUME ANY RESPONSIBILITY FOR THE CONDITION OF THE PROPERTY. THE CORRECTION OF ANY DEFECTS NOW EXISTING OR THAT MAY DEVELOP WILL BE THE RESPONSIBILITY OF THE PURCHASER. R. at 300.

On February 17, 1988, the appellant wrote a letter to the Alliance Mortgage Company [hereinafter "Alliance"], the purchaser of the trust note from the lender, informing them that the quality of the neighborhood was deteriorating and that unless he found a legitimate buyer by the 15th of April, he wanted to relinquish title to the home. R. at 111. The appellant described his neighborhood as being "inundated with a dozen or more ill-bred little devils ... leaving death and destruction in their wake." *Id.* The appellant also described his efforts to sell the property and requested information as to how to solve the problem. *Id.*

Alliance replied by letter dated March 1, 1988, stating that they could not accept a deed in lieu of foreclosure since that was a VA decision and suggested three options: (1) contact VA and request a deed in lieu; (2) advertise for a renter; and (3) reduce the

sale price of the home to attract qualified buyers. R. at 113.

The appellant and his spouse wrote a letter to VA's Home Loan Section, on March 14, 1988, describing the excellent condition of their property, the poor condition of the neighborhood, their successful relocation, and their efforts to sell their home. R. at 115. The appellant also explained that he was facing financial difficulties because his wife had recently undergone two cancer surgeries. R. at 120. The appellant urged VA to accept a deed in lieu of foreclosure rather than permit a deficiency judgment against him. *Id.*

On March 21, 1988, the appellant met with a VA loan representative to discuss the option of accepting a deed in lieu of foreclosure. R. at 127. A second meeting was held on April 1, 1988, in which the appellant and representative again discussed the deed in lieu option and other options with respect to the property. *Id.* The VA loan representative then called Alliance and asked that the appellant be sent a "deed in lieu package." R. at 125. The appellant did not make the April 1988 payment on the note, thereby defaulting on the loan. R. at 129.

Alliance sent the appellant and his spouse a letter on April 6, 1988, informing them that "VA has agreed to accept the Deed in Lieu and that we should forward the necessary paperwork to begin the procedure." R. at 134. The appellant also was asked to keep the loan current and maintain the property. *Id.* T.D. Service Company, an agent of Alliance, mailed the appellant several documents to be completed by May 23, 1988, in order to process a valid deed in lieu. R. at 226. A letter from Alliance, dated May 23, 1988, informed the appellant that VA had received the necessary paperwork, that "everything was right on course," and that they were awaiting final approval from VA. R. at 224.

On June 7, 1988, a VA loan representative called the appellant to discuss the confusion regarding the total indebtedness and whether the appraised value would cover the loan balance. R. at 148. On June 8, 1988, a VA loan representative wrote Alliance and informed them that accepting a deed in lieu was not in the "best interest of the govern-ment." R. at 153. The VA loan officer noted on a worksheet that "vet [sic] let home go into default because he does not like neighborhood—He can make payments." R. at 151. In a letter to VA dated July 11, 1988, the appellant expressed his shock and dismay that VA "reneged on the authorization and ordered a foreclosure." R. at 163–64.

Alliance instituted foreclosure proceedings in July 1988, culminating in a sale of the property in November 1988. R. at 155–58, 161, 214. Alliance bought the property for $50,873.00 at the sale and conveyed it to VA for resale. R. at 202. VA paid Alliance the $10,555.08 that remained on the deed of trust. R. at 218, 222. After calculating costs and expenses, the appellant was assessed an indebtedness of $9,983.38 on the loan guaranty. R. at 256–57.

On September 18, 1989, the appellant requested a waiver of the indebtedness. R. at 230–39. The waiver was denied. R. at 246–48. The appellant filed a Notice of Disagreement (NOD) with the VA regional office (RO) appealing the denial of the waiver on May 8, 1990. R. at 261. VA issued a Statement of the Case (SOC), on June 26, 1990, explaining that VA would not waive recovery of the indebtedness because the appellant had acted in "bad faith" when he abandoned the property and failed to fulfill his contractual obligations. R. at 265–68. The appellant perfected his appeal on September 19, 1990. R. at 270–71.

On December 31, 1991, the BVA issued a decision regarding the appellant's entitlement to waiver of indebtedness. R. at 327–35. The Board found that there was no showing of bad faith on the part of the appellant or any intent to take advantage of the VA. R. at 329. The BVA remanded the case to the RO for the appellant to complete a VA Form 4–5655, Financial Status Report Form (Form 4–5655). R. at 327–33. The RO was also instructed to review the record and determine whether the appellant was entitled to a waiver of the indebtedness. R. at 332–33. The appellant completed the form (R. at 340–41), but VA still denied a waiver. R. at 343.

The appellant appealed once again to the Board. R. at 347. On October 29, 1992, the BVA remanded the case to the RO to provide the appellant with another VA Form 4–5655, apparently because the RO had not received the Form 4–5655 previously completed by the appellant. R. at 349–51. The Board also instructed the RO to apply the "equity and good conscience" standards of 38 C.F.R. § 1.965(a)(1995) in determining whether the appellant was entitled to a waiver of indebtedness. *Ibid.* The appellant resubmitted Form 4–5655 which he had previously completed. R. at 368–69. On November 4, 1993, VA issued a Supplemental Statement of the Case (SSOC) which explained that the request for a waiver had been denied. R. at 378–81. The appellant filed an NOD on January 11, 1994. R. at 401–04.

The BVA issued a decision on June 15, 1994. *Kaplan,* BVA 94–09229. The Board found that neither the appellant nor the lender was without fault. R. at 11. The BVA also found that the appellant's income, based upon the information on VA Form 4–5655 was sufficient to permit repayment of part of the loan indebtedness. *Id.* Taking into account the principles of equity and good conscience, the Board decided that "the most equitable and objective measure of that indebtedness would be to hold the veteran responsible solely for the obligation of the loan up until the time he initially defaulted and simultaneously petitioned for the acceptance of a deed in lieu of foreclosure." R. at 20. The projected amount of indebtedness was calculated to be $4,145.26 plus accrued interest. *Id.* The appellant filed an appeal to this Court on July 29, 1994.

## II. ANALYSIS

### A. Applicable Law

■ VA provides housing assistance by guaranteeing home loans made to veterans by private lenders. *See generally* 38 U.S.C. §§ 3702–3714; 38 C.F.R. part 36 (1995). In the event that there is a default on the loan or loss of the property, the Secretary may waive repayment of the indebtedness if collection would be "against equity and good conscience." *See* 38 U.S.C. § 5302(b); 38 C.F.R. § 1.964(a)(3). The phrase "equity and good conscience" means "arriving at a fair decision between the obligor and the government." 38 C.F.R. § 1.965(a). In making this determination, consideration will be given to the following elements: (1) the fault of the debtor; (2) the balancing of faults between the debtor and VA; (3) undue hardship; (4) the defeat of the purpose of the existing benefit; (5) unjust enrichment; and (6) whether the appellant changed position to his detriment. *Ibid.* Also, there cannot be any indication of fraud, misrepresentation, or bad faith on the part of the person seeking the waiver. 38 U.S.C. § 5302(c); 38 C.F.R. § 1.964(a)(2); *see also Farless v. Derwinski,* 2 Vet.App. 555 (1992).

■ The appellant claims that the BVA's decision to grant only a partial waiver of the indebtedness is invalid. Appellant's Br. at 8; R. at 292. This Court has held that an appellant may challenge such BVA decisions regarding waivers of indebtedness. *See Schaper v. Derwinski,* 1 Vet.App. 430, 433–34 (1991); *Smith v. Derwinski,* 1 Vet. App. 267, 279 (1991).

■ Pursuant to this Court's opinion in *Smith,* 1 Vet.App. at 279, "Waiver decisions, and review of such decisions by the BVA, are subject to review by this Court to determine whether the statutory standard was applied in accordance with the regulatory guidance or whether the decision was made in an arbitrary and capricious manner." *See also Cullen v. Brown,* 5 Vet.App. 510, 512 (1993). The scope of review under the "arbitrary and capricious" standard is narrow and a "court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962)).

Although argued in the record and addressed in the Secretary's brief, the appellant fails to raise on appeal to this Court the

issue of whether VA has authority to enforce loan indebtedness in California, a state having an antideficiency statute. In *U.S. v. Rossi*, 342 F.2d 505, 506 (9th Cir.1965), the Ninth Circuit held that VA regulations preempted the antideficiency statutes in California. The holding in *Rossi* was more recently followed in *Connelly v. Derwinski*, 961 F.2d 129 (9th Cir.1992), and is persuasive. Therefore, this Court will address only the issue of whether the partial waiver of indebtedness by the BVA was in accordance with the regulations.

### B. Application of the Law to the Facts

■ The Board's June 15, 1994, decision to uphold a partial waiver was well reasoned, given the application of 38 C.F.R. § 1.965(a) to the facts in this case. The BVA found that the appellant had defaulted on the loan in May 1988, thereby necessitating foreclosure of the property. In examining "fault," the Board reasoned that neither the appellant, the lender, nor VA was without fault. The appellant abandoned the property and neglected his contractual responsibility to the government when he moved away from the property and failed to make the loan payment in April 1988. Although the deterioration of the appellant's neighborhood was an unfortunate circumstance beyond his control, it was also beyond the control of VA, and it does not absolve the appellant from his obligation. In the guaranty application, VA expressly denied any responsibility for the condition of the property. There was no justification for the appellant's abandonment of his loan obligation.

Although VA was not responsible for the circumstances causing the appellant's default, there is evidence that the holder of the deed of trust, Alliance, misled the appellant to believe that VA had accepted his deed in lieu of foreclosure, and acceptance would have released him from further obligations. The appellant substantially relied upon written assurances from Alliance that the deed in lieu option would be accepted and his responsibility for loan payments excused. The Board found that VA's failure to "perceive and rectify the confusion" should be considered a factor in balancing the faults of the appellant. The BVA reasoned that under "equity and good conscience," the appellant should not be responsible for the entire amount of the indebtedness.

The Board also found evidence that the appellant would be unjustly enriched if a full waiver was granted. The appellant used the VA guaranty to obtain another loan for the purchase of a new home at a favorable interest rate with essentially "no money down." The Board viewed this fact as "unjust enrichment" under section 1.965(a) and considered it in its equitable decision to grant a partial, rather than full, waiver of loan indebtedness.

Finally, the Board found no evidence that waiver of partial indebtedness would create undue hardship for the veteran and his spouse. The BVA required VA, after both remand decisions, to distribute VA Form 4–5655 and have the appellant list and describe his current financial status. The VA Form 4–5655 showed that "with prudent budgeting" the appellant and his spouse could repay the remaining indebtedness without sacrificing the basic necessities. R. at 19.

The BVA's well-reasoned analysis and application of the regulations demonstrates that the decision to waive $5,838.12 of the total indebtedness was neither arbitrary, capricious, nor an abuse of the Secretary's discretion. The assessment of $4,145.26 plus accrued interest is fair, equitable, and in good conscience.

### III. CONCLUSION

For the reasons stated, the Court AFFIRMS the June 15,1994, decision of the Board.