Anna B. JORDAN, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 95–714.

United States Court of Veterans Appeals.

April 1, 1997.

Jeffrey James Wood, was on the briefs, for appellant.

Mary Lou Keener, General Counsel, Ron Garvin, Assistant General Counsel, and David W. Engel, Deputy Assistant General Counsel, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Judges.

NEBEKER, Chief Judge:

The appellant, Anna Jordan, appeals a May 30, 1995, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to a waiver of recovery of an overpayment of dependency and indemnity compensation (DIC) benefits in the amount of $22,241.50. Upon consideration of the briefs of the parties and the record on appeal, the Court will affirm the Board's decision for the following reasons.

## I. FACTS

The veteran, James E. Anderson, served on active duty in the U.S. Marine Corps from July 1946 to September 1947 and from June 1948 to April 1968. Record (R.) at 22–29. He died in March 1972 from a heart attack. R. at 32.. In May 1972, the veteran's widow, the appellant, was awarded DIC benefits for herself and their minor son, upon a finding that the veteran's death was service connected. R. at 39, 44. Included in the information sent regarding the DIC benefits was a page titled "CONDITION AFFECTING RIGHT TO PAYMENTS," which stated that if she remarried, her DIC eligibility would terminate and that any checks received thereafter were to be returned to VA along with a statement showing the date of remarriage. R. at 84.

In July 1984, the appellant remarried. R. at 52. Sometime thereafter, Mrs. Jordan notified VA as to her name change (from Anderson to Jordan), and her address change. She asserts that, at that time, she informed VA of the remarriage. Appellant's Brief (Br.) at 5–6. However, VA denies that notification as to the *remarriage* was received. R. at 11. Regardless, VA continued to send DIC payments to the appellant at her new address, and in her new name. R. at 88. In February 1990, VA sent a "Marital Status Questionnaire," addressed to "Anna B. Jordan," requesting verification as to her "unmarried status and continued entitlement to DIC." R. at 52. On March 13, 1990, a VA regional office (RO) received the completed form which reported her remarriage as of July 1984. *Ibid.* She also sent a letter which stated:

After remarrying, I contacted the VA Office asking what I should do with the check that I had. I was told to hold on to the check until someone contacted me letting me know if I was entitle[d] to the check or not. I kept this check [and] another one. During the conversation I gave all the information of my remarrying. After that time we move[d] three times with me reporting the moves to the VA office. After our move the checks began to come in my married name. I assumed that I was enti-tle[d] to the checks.

R. at 54. On June 22, 1990, Mrs. Jordan was informed of the overpayment of $44,483.00 in DIC benefits, and of the fact that she then owed that amount. R. at 58. In the "NO-TICE OF RIGHTS" section, the letter ex-plained:

You have the right to request a waiver of the debt and the right to an oral hearing on the waiver request. Waiver means that you will not have to pay the debt. A waiver can only be granted if you were not at fault in causing the debt or if any fault on your part is excusable, and if payment of the debt would cause a hardship.

R. at 58. She requested a waiver. R. at 60. Before the Committee on Waivers and Com-promises, Mrs. Jordan testified that she nev-er read the back of the DIC entitlement letter which specified that remarriage would change her entitlement to benefits. R. at 76. She was also informed that the questionnaire she had received in February 1990 repre-sented a new VA procedure, initiated "to

prevent situations like what happened in" her case. R. at 76–77.

On October 17, 1990, the Committee issued its decision, which granted a partial waiver of the indebtedness. R. at 87–89. Notably, the decision stated:

A complete review of our file fails to show what report was used to effect the change of name. There is also no record of any request to change addresses, or to inquire into your continued eligibility made by yourself or any others. However, there is a micro tape record of checks having been mailed to you under your new name and address changes have taken place. Some fault on the part of the VA may exist and since the law states that any doubt must be resolved in your favor, we must agree that continued payments past the date of your remarriage were caused by VA error.

. . . .

After full consideration of all the element[s] of equity and good conscience, it has been determined that a full waiver cannot be granted. Resolving doubt to your favor however, one half of the debt will be waived due to possible VA error and one half of the debt must be repaid as your actions were shown to contribute at least in part to the creation of the debt.

R. at 88–89. The partial waiver reduced the amount of the overpayment balance to $22,-241.50. R. at 95. The RO received Mrs. Jordan's Notice of Disagreement as to that decision in November 1990 (R. at 102–03), and issued a Statement of the Case in March 1991 (R. at 105–11). At a personal hearing in October 1991, Mrs. Jordan testified that, despite repeated phone calls, the DIC checks continued to be mailed to her at their new address, and in her new name. R. at 138–39. In November 1991, the Committee confirmed and continued the previous partial grant of a waiver of indebtedness. R. at 151. Following a remand by the Board for further development (R. at 163–66), the Committee again continued and confirmed its previous decision in November 1993 (R. at 173). In that decision, the Committee stated, "VA also bears fault. Although the claims file does not contain any notification from you of your remarriage, development should have been made

when you requested a name change on your benefits payments, that is, VA should have inquired into your marital status." *Ibid.* In August 1994, after reopening Mrs. Jordan's claim for reconsideration, the Committee determined that no change was warranted in the prior decision. R. at 205.

In the BVA decision here on appeal, the Board framed the issue as Mrs. Jordan's entitlement to a full waiver of the moneys that VA had overpaid her, i.e., waiving the remaining $22,241.50. R. at 5. The Board concluded that because the creation of the debt was not solely due to VA error, the debt was properly created, and further, that it would not be against the principles of equity and good conscience to recover the overpayment from the appellant. R. at 8. In the section entitled Findings of Fact, the Board stated, inter alia,

3. VA does not bear sole responsibility for the creation of the overpayment as the RO did not have actual notice of the appellant's July 1984 remarriage until March 1990.

4. The appellant bears significant fault with respect to creation of the indebtedness by virtue of her failure to promptly notify VA of her remarriage and continuing to accept DIC benefits.

5. VA bears minimal fault with respect to creation of the indebtedness by virtue of its failure to inquire as to the appellant's marital status upon notification of her name change in 1984.

6. There is no indication of fraud, misrepresentation, or bad faith by the appellant.

R. at 7. The Board found that VA

did not have actual notice of the appellant's remarriage until March 1990. Although the appellant asserts that she notified VA by phone of her remarriage, the folder does not reflect that the VA received this information. Records only show that VA was informed of the appellant's name and address change.

R. at 11. The Board determined that Mrs. Jordan's testimony regarding notification of her remarriage lacked credibility (*Ibid.*), and further that she had been constructively notified as to DIC eligibility termination upon

remarriage (R. at 13). With regard to the fact that the DIC checks bore Mrs. Jordan's changed name and address after her remarriage, the Board stated, "A change of name . . . may be accomplished for a wide variety of reasons to include personal caprice. Therefore, the fact that the RO knew the appellant was using a new name does not impute knowledge to the VA that she had remarried." R. at 11.

## II. ANALYSIS

### A. Validity of the Creation of the Debt

■ Both parties vigorously argued the factual issue of whether Mrs. Jordan actually informed VA of her remarriage. The appellant, through counsel, states that inadequate reasons and bases were offered for the Board's determination that Mrs. Jordan's testimony lacked credibility, and the Secretary contends that such a determination has a plausible basis in the record. The Court holds that whether Mrs. Jordan actually reported her remarriage to VA is immaterial to the outcome of this appeal. Assuming such a disclosure occurred, it would not have absolved Mrs. Jordan of the responsibility of reading the regulations that were included in her initial DIC package, nor would it have validated cashing the checks that were subsequently sent to her. As resolution of the disputed factual issue in this case is not determinative of the outcome, the question whether the BVA erred in determining the validity of the creation of debt is a question of law, which this Court reviews de novo. 38 U.S.C. § 7261(a)(1); cf. *Buzinski v. Brown*, 6 Vet.App. 360, 364 (1994)(determining de novo the validity of loan guaranty indebtedness); *Travelstead v. Derwinski*, 1 Vet.App. 344, 346–47 (1991)(applying de novo review to a statutory provision which permitted a release from liability obtained by a veteran-debtor; "Our review of how the release provision of [the statute] was applied or how it should be applied falls into the category of permissible actions under [38 U.S.C. 7261(a)(1) ].").

■ Before the Court, Mrs. Jordan asserts that application of section 5112(b)(10) of title 38, United States Code, "precludes the creation of an overpayment of [DIC] to the appellant because the VA committed sole administrative error by failing to discontinue her benefits to reflect her remarriage in 1984." Appellant's Br. at 5. The Secretary argues that the erroneous payments were not solely the responsibility of VA, and therefore section 5112(b)(1) controls the outcome in the instant case. Section 5112(b) states in pertinent part:

(b) The effective date of a reduction or discontinuance of . . . dependency and indemnity compensation . . .—

(1) by reason of marriage or remarriage . . . shall be the last day of the month before such marriage [or] remarriage . . . occurs;

. . . .

(10) by reason of an erroneous award based solely on administrative error or error in judgment shall be the date of last payment.

38 U.S.C. § 5112(b); *see also* 38 C.F.R. § 3.500(n)(1). Under Mrs. Jordan's scenario, the fault lies completely with VA, and therefore the last payment she received in 1990 would amount to the effective date of discontinuance of DIC benefits. The Secretary contends that the last day of June 1984 (the month before her July 1984 marriage) is the effective date of the discontinuance.

The Board concluded that the debt had been properly created, finding both VA and Mrs. Jordan partially at fault. The Court agrees. Mrs. Jordan was in receipt of DIC information which plainly instructed that remarriage would preclude additional compensation, and that any payment checks received subsequent to a remarriage were to be returned to VA with a statement showing the date of the remarriage. R. at 84. It is not disputed that several months after her remarriage, the DIC payments began arriving, payable to her new name and at her new address. While it appears that VA was on constructive notice that a remarriage may have occurred, and that further investigation as to Mrs. Jordan's marital status may have averted the instant situation, nevertheless, such VA error does not excuse the continued acceptance of DIC payments by Mrs. Jordan where she was in receipt of the rules governing such compensation. Professed ignorance

of the applicable regulations, and an admission that the included and relevant materials were not read, reveals that the erroneous payment was not "based solely on administrative error" by VA, and therefore section 5112(b)(1) controls the creation of the debt.

The applicable regulation states that the effective date of discontinuance of an award will be the earliest of the dates which follow in the several subsections, including:

(b) *Error; payee's or administrative.* (1) Effective date of award or day preceding act, whichever is later, but not prior to the date entitlement ceased, on an erroneous award based on an act of commission or omission by a payee or with the payee's knowledge.

(2) Except as provided ..., date of last payment on an erroneous award based solely on administrative error or error in judgment.

38 C.F.R. § 3.500(b)(1); *see* 38 U.S.C. § 5112(b)(9–10). While not a model of clarity, the Court interprets the regulation as providing for a discontinuance of payment that is based on error (either administrative or by the payee) as of the date of the award became erroneous where the award was based on an act of commission or omission by a payee or with the payee's knowledge, but not earlier than the date entitlement ceased. This is consistent with the statutory framework of section 5112, and the circumstances of this case. Here, Mrs. Jordan's failure to act in accordance with the rules governing DIC payments constitutes an omission by the payee, and consequently, her entitlement ceased upon remarriage. Accordingly, the Court holds that the Board did not err in concluding that the debt was properly created.

### B. Waiver of the Debt

The second question before the Court is whether the Board's decision denying waiver of the remaining $22,241.50 debt is arbitrary and capricious. 38 U.S.C. § 7261(a)(3)(A); *see Stone v. Derwinski,* 2 Vet.App. 56, 58 (1992). If the Board articulates a satisfactory explanation for its decision, including a rational connection between the facts found and the choice made, the

Court must affirm. *See Kaplan v. Brown,* 9 Vet.App. 116, 119 (1996); *Smith v. Derwinski,* 1 Vet.App. 267, 279 (1991).

In its decision, the Board apportioned fault among both parties, applied the equity and good conscience standard, and concluded that the "fault shown on the part of the VA when compared to the fault of the appellant would not justify waiving recovery of more than half the overpayment, as has been done by the RO." R. at 13. Further, the Board examined the financial statements submitted by the appellant, and determined that no undue hardship would result from repayment of the remaining debt. Finally, the Board stated that "failure to make restitution of the overpayment would result in unfair gain" to Mrs. Jordan, and that, therefore, the remaining portion of the overpayment would not be waived. R. at 15.

The Court holds that the decision satisfies the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert v. Derwinski,* 1 Vet.App. 49 (1990). The Court also holds that the Board's decision not to waive the remaining $22,241.50 of the total indebtedness was neither arbitrary, capricious, nor an abuse of the Secretary's discretion. *See Stone, supra.*

### III. CONCLUSION

Accordingly, the Board's decision is AFFIRMED.