**Kenneth E. NARRON, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 98–150.

United States Court of Appeals for Veterans Claims.

Dec. 9, 1999.

Kenneth E. Narron, pro se.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; and Carolyn F. Washington, Deputy Assistant General Counsel, were on the pleadings for the appellee.

Before NEBEKER, Chief Judge, and STEINBERG and GREENE, Judges.

NEBEKER, Chief Judge:

The appellant, Kenneth E. Narron, appeals from the June 17, 1997, decision of the Board of Veterans' Appeals (BVA or Board) that determined that an overpayment of $31,758.10 in compensation benefits was properly created, but failed to address the intertwined issue of Mr. Narron's obligation to repay the amount of the overpayment in full or in part. Rather, in its decision, the Board referred to a VA regional office (RO) for development the issue of whether Mr. Narron might be entitled to a waiver of indebtedness. Record (R.) at 2. Mr. Narron filed an informal brief, in which he argues that he exercised due diligence in informing VA of his incarceration and requests that VA adjust the amount of indebtedness; he proposes settlement for a lower figure. The Secretary has filed a motion for remand to permit the BVA to state adequate reasons or bases for the dollar amount it determined had been overpaid to Mr. Narron. Mr. Narron has filed an opposition to the Secretary's motion; he asks for "a decision favorable to the [a]ppellant." Based on the foregoing and the record on appeal, the Court will grant the Secretary's motion and vacate the BVA's decision and remand the matter for the Board to determine, first, as proposed by the Secretary, the amount of indebtedness created by the overpayment and, second, as added by the Court, what amount Mr. Narron is obliged to repay (after adjudicating his request for a waiver), providing an adequate statement of reasons or bases for each of these determinations.

## I. FACTS

Mr. Narron served on active duty from November 1947 to November 1953, and from October 1961 to August 1962. R. at 2, 10–12. He served on active duty for training from July 14, 1973, to September 5, 1973. R. at 19–23. He was granted service connection for degenerative disc disease effective September 6, 1973. R. at 28. After he had received a temporary 100% rating for a convalescent period, he was assigned a 20% rating effective November 1, 1973. Id. The rating was increased to 60% effective October 18, 1974, and individual unemployability was established at that time, giving him a 100% rating. R. at 30.

In March 1993, Mr. Narron informed the VARO by letter that he had been incarcerated in the custody of the Texas Department of Criminal Justice since June 23, 1992. R. at 40. He added that it had been brought to his attention that he could receive only "half" of his "retirement benefit," and requested that VA "[p]lease inform [him] of what appropriate action [he] must take to resolve this matter." Id. A Report of Contact of August 1993 stated that the RO had confirmed that the appellant had been convicted of a felony offense on June 23, 1992, for which he began serving a life sentence on that date. R. at 46. Later in August 1993, the RO advised the appellant by letter that VA was proposing to reduce his payments for the past twelve months, from $614.00 to $83.00, effective August 22, 1992, based on his incarceration. R. at 48. He was provided 60 days

to submit evidence in rebuttal. *Id.* Although he was cautioned that he would be liable to repay any amount of overpayment incurred by his accepting full payment over the next 60 days, this letter contained no notice to Mr. Narron concerning his liability for all other past and future overpayments retroactive to the date of his incarceration. *Id.* Mr. Narron (by letter dated September 8, 1993, stamped as received by the RO on September 13, 1993) responded by requesting a hearing (R. at 51). The VARO notified him that a hearing had been scheduled at the VARO (R. at 58); however, by letter date stamped November 22, 1993, he withdrew his request because he was unable to get released from prison to attend (R. at 60).

The record contains no copy of the initial letter notifying Mr. Narron of the total amount of the overpayment. Because the letter is missing from the record, it is impossible to determine what information regarding appeal and waiver-request rights it may have contained.. However, a May 10, 1994, letter from the appellant to the RO stated: "I have received your notice of April 16th, 1994, concerning the amount of $31,758.10 that I owe the Department of Vetera[n]s Affairs." R. at 62. He again requested a hearing, asking that special arrangements be made so that he could attend, noting: "I am incarcerated." *Id.* He also stated: "I will consider presenting a waiver after the hearing is completed and the amount of funds owed are reduced." *Id.* He later asked, by letter dated May 20, 1994, that he continue to be paid the maximum amount allowed by law until he were to be released from custody because he needed that amount "to exist and make ends meet while incarcerated." R. at 64, 107. A May 27, 1994, letter in response, from VA's Debt Management Center in Minnesota, reflected that $50.00 would be withheld from his monthly benefits of $87.00, "[p]er your request." R. at 108–09.

A June 1994 letter from Mr. Narron stated that the withholding would cause

him "considerable hardship, if not the loss of [his] life." R. at 110. He explained that he would incur expenses because he needed the services of a private attorney and a doctor based on serious health effects he was experiencing, which he attributed to exposure to a toxic clear-coating chemical, without protective gloves or respiratory equipment, in the license plate production unit to which he was assigned. *Id.* He stated that he believed he was not "responsible to make return of this remittance" for the debt incurred after February 1993, when he had notified VA that he was incarcerated. He also asked for an explanation of VA's calculations, stating:

> Furthermore, I do not understand this procedure of whether or not your agency will take the full amount of veterans benefits of which I was receiving or whether your agency will allow me $87.00 a month and take $50.00 from the $87.00 leaving me with $37.00 dollars or, whether your agency is going to take all of the retirement or, all of the $87.00 dollars? These questions need to be answered because I have many different letters indicating many different amount[s] of remittance of which I will be required to make.

R. at 111. In July 1994, the appellant submitted a financial status report that reflected monthly expenses of $1,063.00 and monthly income of "$1,046, 83[sic], and 87.00." R. at 72–73. He stated on the report, "I will have attorney fees and medical fees which will run several thousands of dollars some time this year or the up coming [sic] year." R. at 73.

Payment records from VA reflected that Mr. Narron's monthly compensation payments were reduced to $87.00 per month beginning in July 1994, with a deduction of $50.00 made against this amount in order to recoup the overpayment, resulting in a net monthly benefit of $37.00. R. at 68. A September 15, 1994, letter from the RO indicated that a hearing was scheduled to be held at the Waco RO on October 17, 1994, and added· that he should notify that

office immediately if he was unable to attend. R. at 70. Mr. Narron again wrote to the RO (his letter is dated September 23, 1994, and stamped as received on October 3, 1994), reiterating the fact that he was in prison and would be unable to attend a hearing at the RO. R. at 75. He noted that arrangements could be made with the Director of the Texas Department of Criminal Justice or the warden of his unit for a hearing to be conducted at his unit. R. at 75–76. In this letter, he stated:

> Enclosed please find my Affidavit with a Discussion of the Facts and Issues That Violate Due Process with Exhibits attached in support of the facts that I did not wilfully [sic] take this money and therefore should not be penalized by having to repay all of these funds. Furthermore, I should not be subjected to abuse of authority when your agency at one time informed me that my medical benefits would be reduced to Eighty–Three ($83.00) Dollars and no/100ths, then informed [me] that the medical benefits would be reduced to Thirty–Seven ($37.00) Dollars and no/100ths at a later date.

R. at 75.

It is not clear from the record whether a copy of the affidavit to which Mr. Narron refers in his letter was enclosed and also received by the VARO on October 3, 1994; however, a copy of an affidavit dated September 23, 1994 (but which bears a handwritten November 1, 1994, receipt date), is contained in the record. R. at 80–86. The affidavit more specifically contests the reduction of his monthly benefits payment to $37.00, and the computation of $31,758.10 as the amount of his indebtedness. R. at 85. The RO responded that it could not comply with his request that a hearing be conducted at his prison unit. R. at 78.

Mr. Narron subsequently filed a timely Notice of Disagreement with VA's actions reducing his benefits. R. at 113. The RO issued a Statement of the Case that addressed only the issue of whether the reduction in compensation due to incarceration was proper, but did not address the issue of waiver. R. at 119–23. Mr. Narron's substantive appeal of September 1995 reasserted his contention that his due process rights were violated by the failure to provide him a hearing and to address his argument that, because he had promptly notified VA that he was incarcerated upon learning that he was required to do so, he should not be responsible for additional months of overpayment incurred because of VA's lengthy delay in processing the reduction of his monthly benefits. R. at 128–32. He also argued that the amount of monthly benefits, against which the reduction had been calculated, was incorrect. *Id.*

The BVA's June 1997 decision addressed only the issue of whether an overpayment of compensation benefits in the amount of $31,758.10 was properly created, and decided that it had been. The Board found no merit in what it construed as a constitutional challenge to VA's action in reducing monthly benefits, pointing out that the statute requiring the reduction in benefits had been held constitutional by this Court. R. at 5–6. The Board noted that "the veteran's allegations regarding financial hardship and his attempts to report his incarceration to ... VA concern the issue of waiver of recovery of the overpayment, and are not pertinent to the issues raised on this appeal." R. at 6. In the "Introduction" portion of its decision, the BVA "referred" the issue of waiver to the RO "for appropriate action." R. at 2. This appeal followed.

## II. ANALYSIS

There are two distinct issues raised on this record: first, the propriety of VA's action in creating the total amount of the overpayment and second, the right to recovery of the debt by VA, which includes the question of waiver. Concerning the first issue, 38 U.S.C. § 5313(a)(1) limits the payment of monthly benefits to an individual who was convicted of a felony

and is "incarcerated in a Federal, State, or local penal institution" for more than 60 days. 38 U.S.C. § 5313(a)(1). The limit, 10% of the original benefit, applies from the sixty-first day of incarceration until the day of release. *Id.* Where such an individual, like the appellant, was still in receipt of compensation benefits, an overpayment is created in an amount equal to the difference between the amount of full compensation received and the 10% rate authorized for the same period. *See* 38 U.S.C. § 5313(a)(1)(A) (incorporating by reference 38 U.S.C. § 1114(a), which establishes dollar amount for 10% disability rating).

■ The second issue, VA's right to recover the overpayment in whole or in part, includes the questions of whether the claimant is guilty of fraud and, if not, whether "equity and good conscience" requires waiver. *See* 38 U.S.C. § 5302; *Jordan v. Brown*, 10 Vet.App. 171 (1997); *Farless v. Derwinski*, 2 Vet.App. 555 (1992). The issue of waiver, if timely raised, must be addressed as a condition precedent to recoupment of a debt by VA. Section 5314 of title 38, U.S. Code, provides in pertinent part:

(a) [T]he Secretary shall (unless the Secretary waives recovery under section 5302 of this title) deduct the amount of ... the indebtedness of any person who has been determined to be indebted to the United States by virtue of such person's participation in a benefits program administered by the Secretary from future payments made to such person under any law administered by the Secretary.

(b) Deductions may not be made under subsection (a) of this section with respect to the indebtedness of a person described in such subsection unless the Secretary—

(1) has made reasonable efforts to notify such person of such person's right to dispute through prescribed administrative processes the existence or amount of such indebtedness and of such person's right to request a waiver of such indebtedness under section 5302 of this title;

(2) has made a determination with respect to any such dispute or request or has determined that the time required to make such a determination before making deductions would jeopardize the Secretary's ability to recover the full amount of such indebtedness through deductions from such payments; and

(3) has made reasonable efforts to notify such person about the proposed deductions from such payments.

(c) Notwithstanding any other provision of this title or of any other law, the authority of the Secretary to make deductions under this section or to take other administrative action authorized by law for the purpose of collecting an indebtedness described in subsection (a) of this section, or for the purpose of determining the creditworthiness of a person who owes such an indebtedness, shall not be subject to any limitation with respect to the time for bringing civil actions or for commencing administrative proceedings.

38 U.S.C. § 5314(a), (b), (c).

Section 5302(a), which subsection 5314(b)(1) incorporates by reference, requires that an application for waiver must be made "within 180 days from the date of notification of the indebtedness by the Secretary to the payee." 38 U.S.C. § 5302(a). It appears from the record that, although Mr. Narron received notice in August 1993 that his benefits would be reduced based on his incarceration, he was first notified in April 1994 of the total amount of indebtedness and the reduction of his monthly benefits by $50.00 to provide for repayment of the amount owed. R. at 62, 107–08. The notice letter is not part of the record before the Court, but no question has been raised as to the accuracy of Mr. Narron's statement concerning the date of the letter.

■ A threshold issue is whether Mr. Narron timely contested the amount of indebtedness and requested a waiver so as to trigger the obligations that section 5314 places upon the Secretary. The Court reads sections 5302(a) and 5314(b) and (c) as requiring that the notification of indebtedness must specify the Secretary's preliminary determination as to the amount of the debt. Hence, the Court concludes that the April 16, 1994, notice letter is the event that triggered the section 5302(a) 180-day period in which Mr. Narron could file a request for a waiver (assuming that the letter contained the requisite information concerning his right to do so). His September 23, 1994, letter to the VARO, stamped as received on October 3, 1994, was such a request and was filed within the 180-day period. R. at 75.

■ On this record, we hold that Mr. Narron timely asserted his claim for a partial waiver, thus requiring application of section 5314(b)(2). However, no determination was made as to waiver prior to the initiation of recoupment, nor does the record contain a determination that the Secretary's ability to recoup the overpayment would be jeopardized if the claim of waiver were resolved before recoupment began. *See* 38 U.S.C. § 5314(b)(2). After his initial request for a waiver, Mr. Narron continued to write to VA stating that the recovery of overpayment was wrong because the creation of the total debt was not his fault and that the recovery of the debt from his remaining compensation payments created an undue hardship, and requesting that arrangements be made with the Texas penal authorities so he could be given a hearing. *See e.g.,* R. at 80–86, 107, 110; *see also Ridings v. Brown,* 6 Vet.App. 544 (1994) (including absence of fault of debtor and undue hardship in list of factors associated with waiver of overpayment); *see also Wood v. Derwinski,* 1 Vet. App. 190, 193 (1991) (in adjudication of claims of incarcerated veteran, VA should tailor assistance to peculiar circumstances of confinement). Nevertheless, the record

reflects that, in July 1994, before expiration of Mr. Narron's 180–day statutory period in which to request waiver, VA began recovery of the debt from his compensation payments, by deducting $50.00 each month from benefits that had been reduced to the 10% compensation level permitted under section 5313(a)(1). These deductions apparently continued after his October 3, 1994, request for a waiver, without VA's ever having considered the timely waiver application.

In its decision, the BVA rejected as unmeritorious an argument that the statute requiring reduction of the appellant's monthly benefits payment is unconstitutional. R. at 5 (citing *Latham v. Brown,* 4 Vet.App. 265 (1993)). However, the appellant's brief here and his communications to VA make clear that he challenged neither the constitutionality of the statute nor the Secretary's authority to reduce his benefits during the period of his incarceration. *See, e.g.,* Appellant's Brief at 1; R. at 40, 83–84. He concedes that he is liable for the overpayment created when he received full benefits during the period before he notified the Secretary that he was subject to this reduction. R. at 84. Rather, he argues that his overpayment should be reduced by the amount he attributes to VA's delay in making the reduction after he notified VA that he was incarcerated; that the further reduction for recoupment (which brought his monthly benefit down to $37.00) caused him great hardship; and that he should have been provided some sort of personal hearing—or at least a clear explanation—before the recoupment began at the level set by VA. In substance, he is seeking compliance with section 5314, that is, disposition of his claim that a portion of the debt should be waived before recoupment proceeds.

The Secretary seeks remand on the ground that the Board failed to provide an adequate statement of reasons or bases to permit the claimant to understand the precise basis for the Board's decision, and to facilitate review in the Court. *See* 38

U.S.C. § 7104(d)(1); *Gabrielson v. Brown*, 7 Vet.App. 36, 39–40 (1994). The Secretary concedes that "on remand the Board should provide reasons and bases justifying why $31,758.10 or some other amount is the proper amount of the overpayment." Secretary's Motion for Remand at 3. The record contains repeated pleas from the appellant for an explanation of the way the overpayment had been computed, but contains no response providing a straightforward computation, and the Secretary's request for remand on this ground is appropriate.

■ The Board, having concluded that the issue of waiver of overpayment was not properly before it on appeal, referred· the issue to the RO. The Board's referral of the issue was in error. *See Godfrey v. Brown*, 7 Vet.App. 398, 409–10 (1995) (citing *Bernard v. Brown*, 4 Vet.App. 384, 391–92 (1993)) (where two questions are components that relate to single decision by Secretary, Board had authority "to de-·cide all questions presented on the record before it that were necessary to its decision on that matter"). The BVA erred prejudicially not only when it declined to address the issue of waiver, but also when it decided that recoupment of $31,758.10 was valid without presenting an adequate statement of reasons or bases for the calculation of that amount, and when it failed to discontinue recoupment pending disposition of the October 3, 1994, waiver request. Under the circumstances here present, the effect of the Board's decision not to address waiver had the full force of a denial without the Board's making the necessary determination and without an adequate articulation of reasons or bases.

The Court notes that normally, under *In re Panel Referrals in Pro Se Cases*, 12 Vet.App. 316 (1999) (en banc order), the Court would not make a precedential disposition in a case involving an unrepresented appellant without first staying the case for 30 days to permit the pro se appellant to obtain representation. The Court does not deem that process neces-sary in this case because the outcome here is favorable to Mr. Narron, based on the plain meaning of 38 U.S.C. § 5314, as applied to the record. *See Curtis v. West*, 13 Vet.App. 114, 116 (1999) (per curiam). The Secretary has had a full opportunity to plead the merits, and the disposition of this appeal is consistent with, although it goes beyond, the relief sought by the Secretary. Accordingly, at the direction of the Court, the Clerk vacated the October 15, 1999, order staying this appeal pursuant to *In re Panel Referrals in Pro Se Cases, supra.*

## III. CONCLUSION

On consideration of the foregoing, the Court grants the Secretary's motion for a remand and holds that the Board committed prejudicial error when it determined that recoupment of an overpayment of $31,758.10 was proper. *See* 38 U.S.C. § 7261(b). The June 17, 1997, BVA decision is VACATED and the matter of recoupment is REMANDED for (1) disposition of Mr. Narron's request for a waiver and, absent the grant of a full waiver, for (2) recalculation of the overpayment, supported by an adequate statement of reasons or bases as to both determinations. *See* 38 U.S.C. § 7104(d); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990). As requested by the Secretary (Motion at 4), a copy of this opinion and of the Secretary's March 1999 motion will be made a part of Mr. Narron's claims file on remand.