BARTLEY, Judge,
concurring in part and dissenting in part:
I dissent from part II.C of the decision because no debt was validly created between January 2009 and April 2009. During that period Mr. Dent fulfilled all legal requirements by notifying VA of his income change. Given VA’s failure to promptly reduce his pension payment after such notification, or to communicate that he should return subsequently received checks, he had no knowledge that continued receipt of pension at an unadjusted rate was wrong. Consequently, VA’s continued payments at. the same rate between January 2009 and April 2009, after VA received notice of Mr. Dent’s changed income, is administrative error solely due to VA inaction in processing the veteran’s income information and in failing to communicate with him.
Pursuant to 38 U.S.C. § 5112(b)(9) and (10), a debt is created when an “erroneous award” of benefits is “based on an act of commission or omission by the beneficiary, or with the beneficiary’s knowledge.” See 38 C.F.R. § 3.500(b). A debt is not creat *388 ed when such award is “based solely on administrative error or error in judgment,” Id.; G.C. Prec. 2-90. As to whether there was “an act of commission or omission by the beneficiary,” the law requires that an individual who has applied for or receives pension “promptly notify the Secretary whenever there is a material change in-the annual income of such applicant or recipient.” 38 U.S.C. § 1506(3) (emphasis added); see 38 C.F.R. § 3.277(b)(1) (2015) (requiring that pension applicants and recipients “notify the Secretary of any change affecting entitlement,” including changes in income (emphasis added)). Mr. Dent took the precise action legally required of him by statute and VA regulation, promptly notifying VA in January 2009 of his changed income. There is no legal requirement other than notification placed on pension recipients when their income changes. See generally Veterans’ Benefits: Improved Management Would Enhance Va’s Pension Program, Gov’t Accountability Office 5 (Feb. 2008) [hereinafter 2008 GAO Report] (explaining that “[pensioners are required to report any changes in income, dependency, or other relevant circumstances to VA so that benefit levels can be adjusted accordingly” and that “pensioners are required to inform VA of any changes in their circumstances ... that could affect their eligibility or benefit levels” (emphasis added)). At that point, veterans rely on VA to recalculate their pension benefits and inform them of any change in pension rate.
Not only did Mr. Dent comply with the applicable statutes and VA regulations, he complied with each and every instruction he received from VA. When Mr. Dent applied for pension, he was instructed to “give [VA] a copy” of any monthly benefit award letter to “help [VA] determine the amount of benefits [he] should be paid.” R. at 353. Then, when initially awarded pension, the RO informed him that (1) his pension rate “may be affected by any changes in the amount of [that] income,” VA Form 21-8768 (emphasis added); and (2) he was “responsible to tell [VA] right away if [his] income or the income of [his] dependents change[d],” including via receipt of SSA benefits (R. at 150; see also VA Form 21-8768 (“You are required to report the total amounts and sources of all income.... Notify us immediately if there is a change in any condition affecting your right to continued payments.”)). He was also informed that “[fjailure to notify [VA] of [income] changes immediately will result in an overpayment which is subject to recovery” (VA Form 21-8768) (emphasis added).
As the Board found, Mr. Dent promptly took appropriate action in January 2009 to notify VA of the December 2008 award of SSA benefits as required. R. at 9; see R. at 117-37. Per statute (38 U.S.C. § 1506(3)), VA regulation (38 C.F.R. § 3.277(b)(1)), and VA instructions (R. at 148-52, 353; VA Form 21-8768) and contrary to the Board’s (R. at 9) and the majority’s conclusions (ante at 384), no further action was required of him in January 2009. Because he fully complied with the applicable statutes, VA regulations, and instructions relevant to changes in income for VA pension beneficiaries, it cannot be said that the erroneous award of pension benefits was even in part based on an act of commission or omission by Mr. Dent. See 38 U.S.C. § 5112(b)(9); 38 C.F.R. § 3.500(b)(1).
As to whether Mr. Dent had “knowledge” that his VA pension payments between January 2009 and April 2009 were erroneous, the Board (R. at 9) and the majority, ante at 383, found that he had knowledge in January 2009 that, even after he had notified VA of his changed income, his continued receipt of pension benefits at an unadjusted rate would result in an over *389 payment that would ultimately be subject to recovery. But, as explained above, Mr. Dent was informed only that failure to notify VA of an income change would result in a recoverable overpayment. VA Form 21-8768 (“Failure to notify [VA] of [income] changes immediately will result in an overpayment which is subject to recovery”). At no point was he expressly or impliedly informed that an overpayment would result from continuing to accept pension checks after having fulfilled the notification requirement. Nor was he expressly or impliedly informed that he should take any action other than or in addition to informing VA of the income change. He was not told to return his pension checks to VA or to refrain from cashing those checks.[17]
Although the majority draws parallels between Mr. Dent and the beneficiary in Jordan v. Brown, Ms. Jordan was “plainly instructed” that remarriage would “terminate” her benefit entitlement and that any checks received subsequent to a remarriage were to be “returned” to VA. See Jordan v. Brown, 10 Vet.App. 171, 174-75 (1997). The Court in Jordan therefore reasoned that her “[p]rofessed ignorance of the applicable regulations” and “admission that the included and relevant materials were not read” foreclosed a finding of sole VA administrative error because knowledge of those rules could be imputed to her. Id, However, unlike Ms. Jordan, Mr. Dent was not instructed at the time that he was awarded VA benefits, or at any other time, that he should return or refrain from cashing pension checks received after he notified VA, or that a change in income would necessarily reduce his pension benefits. Nor was he informed that there would be a detrimental consequence for continuing to cash pension checks that VA erroneously sent to him after he took the legally required steps to notify the Agency of his income change. R. at 148-52; VA Form 21-8768. Thus, knowledge that a debt would be created if he cashed subsequent checks after timely notifying VA of an income change — a consequence not delineated in applicable statutes and regulations or in any communication sent to Mr. Dent — cannot be imputed to him.
The lack of plain instructions to Mr. Dent contrasts sharply with the clear instructions provided to Ms. Jordan. Ms. Jordan’s case illustrates that VA is able to inform veterans and beneficiaries when action beyond disclosure of a change is necessary. See Jordan, 10 Vet.App. at 174. VA’s lack of clear guidance in this case resulted in Mr. Dent’s confusion about the effect'of the December 2008 SSA award on his VA pension benefits. This confusion is evinced by his January 2009 letter asking VA to confirm his pension rate (R. at 136), his repeated efforts to attempt to clarify that matter (R. at 14-16, 43-44, 77-78, 626), and the conflicting responses he received (id).[18] Such confusion does not *390 meet the definition of “knowledge” in that it does not reflect “[a]n awareness or understanding of a fact or circumstance” or “a state of mind in which a person has no substantial doubt about the existence of a fact.” Ante at 380 (citing Black’s Law Dictionary 950 (9th ed. 2009)). To the contrary, Mr. Dent’s actions, testimony, and letters all reflect substantial doubt as to his appropriate pension rate after the December 2008 SSA award.
In such a situation, VA’s “liberal policy” of assuming all fault for erroneous payments that cannot “clearly be ascribed to the beneficiary” must control. G.C. Prec. 2-90 (“Whenever the evidence of record [is] equally susceptible of being interpreted as showing a lack of knowledge by the beneficiary and as showing that he or she knew but failed to disclose material facts to [] VA, the doubt [will] be resolved in the beneficiary’s favor.”). Thus, the Board erred in finding that Mr. Dent had knowledge that he was receiving erroneous award payments between January 2009 and April 2009, and that a debt was properly created during that period. To the contrary, those erroneous payments were made without Mr. Dent’s knowledge. See 38 U.S.C. § 5112(b)(9); 38, C.F.R. § 3.500(b)(1).
The majority’s citation to a self-serving internal VA rule, that processing delays and continued payment of benefits following a veteran’s notification of income change is not administrative error, is troubling. Ante at 384; see Harvey v. Shinseki, 24 Vet.App. 284, 290 (2011) (characterizing a four-month processing delay as administrative error); M21-1MR, pt. Ill, subpt. v, ch. 1, § I(3)(f) (“The payment of benefits in an amount exceeding a beneficiary’s entitlement that is due to claims-processing delays is not considered administrative error.”). This provision forces low-income veterans such as Mr. Dent to bear the hardship of a debt that must be repaid even though they complied with all VA legal and instructional requirements. In essence, they are forced to pay for VA’s failure to communicate consequences to veterans and to promptly respond to veterans’ income disclosures. See VA Office of Inspector General, Audit of Pension Payments 4, 11 (Sept. 4, 2013) [hereinafter 2013 Pension Audit] (finding an average 15-month delay in processing changes to running awards of pension, even though 70% of those changes could be “processed immediately upon receipt”); accord VA Office of Inspector General, Review of Pension Management Centers 4 (Mar. 30, 2011) (finding that processing of income verification matches were “not adequate or timely”).
Contrary to the majority’s assertion, I am not insensitive to the Secretary’s fiduciary duty to protect the public fisc. See ante note 16. Rather, I believe that acknowledging as administrative error delay and failure to communicate with veterans, such as Mr. Dent experienced, ultimately lowers the cost of pension overpayments to taxpayers and is consistent with the law in that veterans who comply with VA rules and promptly notify VA of income changes would not be adversely affected. VA would have an incentive to promptly adjust running pension awards after being timely notified of income changes, eliminating or at least minimizing the amount of an overpayment. Significantly, between March 2011 and March 2012, VA’s failure to timely process income-change notifications from veterans and beneficiaries resulted in at least $94 million of pension overpay-ments — a portion of which is ultimately irrecoverable, see 2008 GAO Report at 20 (referencing the burden of recovering *391 overpayments from a low-income population) — plus the attendant costs of debt collection and litigation. See 2013 Pension Audit at 3-4. Moreover, VA has already made the policy decision to assume the cost of pension overpayments that are not the result of beneficiary fault or made with the beneficiary’s knowledge, thereby opting to pass that cost on to taxpayers. See G.C. Prec. 2-90.
In sum, the Board conceded that VA failed to respond reasonably promptly to Mr. Dent’s January 2009 letter or update his income information, even though he took “appropriate action” to timely notify VA of his December 2008 award of SSA benefits. R. at 9. Given that the erroneous award of pension benefits between January 2009 and April 2009 was not based on an act of commission or omission by Mr. Dent or with his knowledge, any and all fault for the consequent payment of pension benefits at the unadjusted rate during that period must be ascribed to VA, compelling a finding of sole administrative error. The majority’s holding to the contrary does not comply with the law, frustrates the purpose of the VA pension program, contravenes VA’s liberal policy of assuming fault for erroneous payments in questionable cases, and unjustly imposes retroactive responsibilities on Mr. Dent that were not previously communicated to him. Therefore, I must respectfully dissent from the majority’s conclusion that a debt was validly created between January 2009 and April 2009.

. The fact that Mr. Dent was initially awarded the maximum amount of pension does not confer knowledge that a subsequent income change would necessarily result in a lower pension rate. At most, that fact indicates that Mr. Dent knew that he would not be entitled to receive a higher pension rate and that he should disclose any income change to VA for it to determine whether an adjustment was warranted. Again, this is precisely what Mr. Dent did in this case,

. Such confusion is surely reasonable given VA’s complex rules regarding how to calculate countable income for VA pension purposes. See 38 C.F.R. §§ 3.271-272. For example, although recurring benefit payments are generally counted as income, see 38 C.F.R. § 3.271(a)(1), some recurring SSA payments are excluded, see 38 C.F.R. § 3.272(a); M21-1MR, pt. V, subpt. iii, ch. 1, § B(l)(k). VA regulations outline at least 23 types of proceeds or expenses that may be excluded or deducted, respectively, from *390 countable income. See 38 C.F.R. § 3.272(b)-(x).